Cleo Phillips d/b/a Phillips Steel Erectors filed a complaint against G.M. Mosley General Contractors, Inc. (Mosley), alleging breach of a contract for the construction of buildings at the Greater Gulf State Fair in Mobile County, Alabama. Mosley asserted an affirmative defense of setoff and filed a counterclaim for breach of contract. The jury returned a verdict in favor of Phillips in the amount of $11,734.56, allowed Mosley a setoff of $3,474.30 on its affirmative defense, and returned a verdict in favor of Phillips on Mosley's counterclaim. Mosley filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, which was denied. Mosley appeals and presents two issues for review.[1] *Page 878 
 I
Is conspiracy to commit mail fraud a crime involving moral turpitude so as to allow impeachment of a witness by proving such a conviction?
Prior to trial, Mosley filed a motion in limine seeking to prohibit testimony regarding a federal conviction of Mosley's chief executive officer, Gerald Mosley, of the crime of conspiracy to commit mail fraud. The trial court allowed such evidence. Mosley contends that conspiracy is not a crime involving moral turpitude and that the trial court erred to reversal in refusing to grant Mosley's motion in limine to exclude such evidence.
A witness may be impeached by proof of his previous conviction of a crime involving moral turpitude. § 12-21-162
(b), Code 1975. "Moral turpitude" is not defined in the statute. This Court has defined moral turpitude as "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen or to society in general." Meriwether v. Crown Investment Corp., 289 Ala. 504,268 So.2d 780 (1972). This definition of moral turpitude reflects the general definition which has been adopted in other jurisdictions. Annot., 23 A.L.R.Fed. 480, § 3, at 491-92.
Conspiracy, like attempt and solicitation, is an inchoate offense designed to criminalize a person's behavior before the substantive crime is completed. Conspiracy is a crime deriving from the special threats posed by organized group criminality (in that a conspiracy involves more than one person). Bassiouni, Substantive Criminal Law 212 (1978). The group danger rationale is predicated on the likelihood that the participants will reinforce each other's determination to carry out the criminal object, the object will be successfully attained, the extent of the injury to society will be large, those who commit it will escape detection, and the group's planning will have a long-term educative effect on its members, with schooling in crime the result. Conspiracy to Defraud theUnited States, 68 Yale L.J. 405, 413 (1959).
At common law, a conspiracy was punished by a "villainous [villenous] judgment." State v. Cawood, 2 Stew. 360 (Ala. 1830). The person convicted of conspiracy was discredited and disabled as a juror or witness and forfeited his goods, chattels, and lands for life. His lands were wasted, his houses razed, his trees were uprooted, and his body was committed to prison. 4 W. Blackstone, Commentaries 136. This Court in Statev. Cawood held that although there was no statute making conspiracy a crime in Alabama in 1830, and although the common law punishment therefor would not be tolerated, it being "if not cruel, at least unusual," nevertheless common law conspiracy could be punished as a misdemeanor by fine and imprisonment.
We need not decide whether conspiracy as such is a crime involving moral turpitude. In § 13A-4-3, Code 1975, conspiracy is designated as a Class A, B, or C felony or a Class A, B, or C misdemeanor based upon the object of the conspiracy. Since we look to the object of the conspiracy to delineate the severity of the offense, it is logical that for purposes of determining whether conspiracy is a crime involving moral turpitude, we look to the object of the conspiracy. Dugas v. Felton,249 N.W.2d 215 (N.D. 1976).
In Jordan v. DeGeorge, 341 U.S. 223, 227, 71 S.Ct. 703, 706,95 L.Ed. 886 (1951), Mr. Chief Justice Vinson wrote: "Without exception, Federal and State Courts have held that a crime in which fraud is an ingredient involves moral turpitude."
In In re Hallinan, 43 Cal.2d 243, 272 P.2d 768, 771 (1954), the Supreme Court of California wrote:
 "Although the problem of defining moral turpitude is not without difficulty, . . . it is settled that whatever else it may mean, it includes fraud and that a crime in which an intent to defraud is an essential element is a crime involving moral turpitude." *Page 879 
The Alabama Court of Civil Appeals in Liberty Truck Sales,Inc. v. Fountain, 381 So.2d 646 (Ala.Civ.App. 1980), recognized this when it decided that the presence or absence of an intent to commit fraud was determinative of whether a conveyance of personal property without the consent of the mortgagee was a crime involving moral turpitude.
Conspiracy to commit fraud is a crime involving moral turpitude, and the trial court properly permitted witness Mosley to be impeached by the introduction of evidence of his conviction thereof.
 II
Was the jury's verdict so clearly the result of a mistake, or otherwise so clearly unsupported by the evidence, as to require that the court grant defendant's motion for a new trial?
Mosley contends that under the facts presented, the verdict should have been either in Phillips's favor for $13,496.26, plus interest, or in Mosley's favor, under the counterclaim, for approximately $3,400. Mosley contends that the "inescapable conclusion is that the verdict [for Phillips for $11,734.56] was the result of the failure of the jury to comprehend and appreciate the issues."
The jury was not presented with a fixed amount of special damages due Phillips, in case it should find in Phillips's favor. There was extensive testimony on the part of both Phillips and Mosley as to specific credits and deductions, which were contested between the parties. These items were presented individually, not as a whole, and their acceptance or rejection was not predicated upon accepting all or none.
The record shows that before the case was submitted to the jury, the attorneys for the parties agreed that the amount of damages and the amount of setoff were not so clearly fixed by the evidence as to preclude the need for a jury calculation.
When a jury is the trier of fact, it is not for the trial judge, nor an appellate court, to attempt to determine with mathematical certainty that all of the various elements of evidence offered by the parties regarding specific costs and credits precisely equal the amount of the jury's verdict. We do not have trial by computer, nor do we have post-trial, or appellate, review by the computer. The reviewing court does not substitute its own judgment as to the amount of damages for that of the trier of fact. Davis v. Copas, 455 So.2d 27
(Ala.Civ.App. 1984).
Because the verdict is supported by the evidence, there is no merit to a contrary contention.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and BEATTY, JJ., concur.
[1] Although § 12-3-10, Code 1975, gives the Court of Civil Appeals "exclusive appellate jurisdiction" of cases where the "amount involved" does not exceed $10,000, that statute also provides that where there is a "recovery" in the trial court the "amount of such recovery" shall be deemed to be the "amount involved." The trial court in this case entered a judgment for the plaintiff for $11,734.56 and a separate judgment for the defendant for $3,474.30.