558 So.2d 909 (1990)
CHARTER HOSPITAL OF MOBILE, INC.
v.
Sheldon R. WEINBERG.
88-639.
Supreme Court of Alabama.
January 12, 1990.
Rehearing Denied February 9, 1990.
*910 Davis Carr and Forrest C. Wilson III, Mobile, for appellant.
Jim H. Fernandez of Allen & Fernandez and Russell S. Terry of Feibelman, Shulman & Terry, Mobile, for appellee.
PER CURIAM.
Dr. Sheldon R. Weinberg sued Charter Hospital of Mobile, Inc. ("Charter"), for damages based on wrongful termination of employment and on conversion of a treatment program for people suffering from drug abuse or alcoholism. He sought punitive damages on each claim. The jury returned the following verdict:
"We the jury find for [Dr. Weinberg] on the claim for wrongful discharge and assess compensatory damages in the amount of $10,000.
"We the jury find in favor of [Dr. Weinberg] on the claim for conversion and assess compensatory damages in the amount of $142,000.
"We the jury assess punitive damages against [Charter] in the amount of $107,000."
Prior to the submission of the case to the jury, Charter had filed a motion for a directed verdict as to each count. Those motions were denied. After the jury verdict, *911 Charter filed a motion for judgment notwithstanding the verdict as to each count. The trial court granted Charter's motion for judgment notwithstanding the verdict as to the wrongful termination count only. Charter now appeals from the judgment based on the verdict on the conversion count. Dr. Weinberg did not cross-appeal from the judgment notwithstanding the verdict on the wrongful termination count; therefore, for purposes of this appeal, the wrongful termination count was a "bad" count.
In Aspinwall v. Gowens, 405 So.2d 134, 138 (Ala.1981), we addressed the effect of a general verdict when a good count and a bad count were submitted to a jury:
"[I]f a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or more of those counts, he must challenge this by motion for directed verdict, specifying the count which is not supported by evidence and detailing with specificity the grounds upon which the particular count is not supported by the evidence. If this is not done and all counts go to the jury and a general verdict is returned, the court will presume that the verdict was returned on a valid count."
See, also, National Security Fire & Casualty Co. v. Vintson, 454 So.2d 942 (Ala. 1984); Lawrence v. Lackey, 451 So.2d 278 (Ala.1984); and Cincinnati Ins. Co. v. Little, 443 So.2d 891 (Ala.1983).
We have not been cited to, nor can we find, a case involving special verdicts for compensatory damages and a general verdict for punitive damages when a good count and a bad count have both been submitted to the jury and the plaintiff has sought to recover punitive damages on both the good count and the bad count. We hold that the trial court cannot presume that the punitive damages verdict was returned on the good count, when the defendant properly challenged the bad count by a directed verdict motion and a motion for judgment notwithstanding the verdict, as specified in Aspinwall. Therefore, insofar as the judgment awards punitive damages, it must be reversed.
Charter also sought a new trial on the conversion count or, in the alternative, a remittitur of compensatory damages for conversion, which the trial court denied. We affirm this action of the trial court.
The strength of the jury verdict is based upon the right to trial by jury, White v. Fridge, 461 So.2d 793 (Ala.1984), and a jury verdict is presumed to be correct. Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala. 1988). This presumption is strengthened by the trial court's denial of a motion for a new trial.
"When a jury is the trier of fact, it is not for the trial judge, nor an appellate court, to attempt to determine with mathematical certainty that all of the various elements of evidence offered by the parties regarding specific costs and credits precisely equal the amount of the jury's verdict. We do not have trial by computer, nor do we have post-trial, or appellate, review by the computer. The reviewing court does not substitute its own judgment as to the amount of damages for that of the trier of fact."
G.M. Mosley Contractors, Inc. v. Phillips, 487 So.2d 876, 879 (Ala.1986). See, also, Hollis v. Wyrosdick, 508 So.2d 704 (Ala. 1987).
"Upon review of a jury verdict, we presume that the verdict was correct; we review the tendencies of the evidence most favorably to the prevailing party; and we indulge such reasonable inferences as the jury was free to draw from the evidence. We will not overturn a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's verdict was wrong and unjust."
Campbell v. Burns, 512 So.2d 1341, 1343 (Ala.1987). (Citation omitted.) See, also, Ashbee v. Brock, 510 So.2d 214 (Ala.1987); Jawad v. Granade, 497 So.2d 471 (Ala. 1986); and White v. Fridge, supra.
In its brief, Charter concedes that there was evidence from which the jury *912 could have determined that Dr. Weinberg had a copyright covering the treatment program. Charter, however, contends that the amount of the jury award$142,000 compensatory damagesfor the conversion of the treatment program is not supported by the evidence.
The trial court charged the jury as follows:
"The damages recoverable for the conversion is the value of the property converted. That would be the common law copyright or trade secret at the date of the conversion or the value of the property at any time between the date of the conversion and up until the time of trial, whichever is greater, with interest thereon at the rate of six percent per annum from the time of the conversion up until the time of trial."
See Alabama Pattern Jury Instructions, No. 39.01.[1]
After a thorough review of the record, we find that no evidence of the kind ordinarily used to prove the value of property was introduced. It appears that such evidence of value, even of an intangible item such as a treatment program, should have been available from the sales proposals offered by Recovery from Chemical Dependency, Inc.,[2] to other facilities, but such evidence was not presented. However, viewing the evidence most favorably to Charter and indulging such reasonable inferences as the jury was free to draw from the evidence, we hold that there was some evidence in the record, uncontradicted and not objected to, that would have allowed the jury to award $100,000 plus six percent (6%) interest per year from the date of the conversion to the date of trial, thereby sufficiently supporting the jury's award of $142,000 in compensatory damages.[3] See National Surety Corp. v. Applied Systems, Inc., 418 So.2d 847 (Ala.1982). Therefore, we affirm the trial court's judgment insofar as it awarded compensatory damages for conversion.
Charter contends that there was no evidence to support the imposition of punitive damages for conversion. In order for punitive damages to be awarded for conversion, the law requires that the conversion be done in known violation of the owner's rights. See Roberson v. Ammons, 477 So.2d 957 (Ala.1985); Ott v. Fox, 362 So.2d 836 (Ala.1978).
This case was filed prior to June 11, 1987; therefore, the applicable standard of review is the "scintilla rule." See Ala.Code 1975, § 12-21-12. Thus, the issue before us is whether there is a scintilla of evidence that Charter knowingly converted the treatment program that Dr. Weinberg had developed.
Dr. Weinberg presented evidence at trial that he had developed the treatment program prior to his employment by Charter and that Charter had continued to use that treatment program subsequent to his termination without his consent (after he had demanded that Charter stop using it). Furthermore, Dr. Weinberg presented evidence that, prior to his employment, he had a discussion with Charter's administrator concerning the ownership rights to the treatment program and also presented to the administrator a job description, which recited that Dr. Weinberg was retaining ownership rights to the treatment program. Dr. Weinberg contends that any continued use of the treatment program by *913 Charter after his termination would necessarily have been willful, because his ownership of the treatment program was an express term of his employment contract and was confirmed in his job description.
Charter does not deny its continued use of portions of the treatment program after Dr. Weinberg was terminated. Rather, Charter's administrator testified that it was his understanding that Dr. Weinberg had been hired to develop a treatment program for Charter and that Charter's staff thought it had every right to continue using the treatment program. Furthermore, the administrator testified that there was never any discussion with Dr. Weinberg concerning ownership rights to the treatment program and that he had never seen or approved a job description for Dr. Weinberg.
Based on the foregoing, we find that Dr. Weinberg presented at least a scintilla of evidence that Charter knew that it had no right or claim to the treatment program in question, but continued to use it in known violation of Dr. Weinberg's rights. Therefore, there existed a question of fact for the jury to determine as to whether Charter willfully converted the treatment program so as to justify the imposition of punitive damages. We recognize the conflicting statements concerning this issue; however, the credibility of the testimony presented by the witnesses is for the jury's determination. See Trans-South-Rent-A-Car, Inc. v. Wein, 378 So.2d 725 (Ala.1979).
Having affirmed the compensatory damages award on the conversion count, we conclude that Dr. Weinberg's claim against Charter should be limited to such punitive damages, if any, as a jury on retrial may assess against Charter for the conversion, if the jury finds that Charter converted the treatment program in known violation of Dr. Weinberg's rights; and the jury should be so instructed. See Hood v. Murray, 547 So.2d 75 (Ala.1989).
Because the punitive damages award has been reversed, we find it unnecessary to discuss Charter's final assertion that the method of imposing punitive damages in Alabama violates defendant's rights to due process of law as guaranteed by the United States and Alabama Constitutions.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
JONES and HOUSTON, JJ., concur specially.
JONES, Justice (concurring specially).
I agree with the opinion, but I write separately and adopt my concurring opinion in Ridout's-Brown Service, Inc. v. Holloway, 397 So.2d 125, 127 (Ala.1981).
I agree in principle with Justice Houston's concurring opinion, except I do not agree that the bifurcation procedure is constitutionally mandated. I believe that, because the present unbifurcated procedure is a product of the common law, the court can prescribe a bifurcated procedure for dealing with the issue of punitive damages as a modification of the common law.
HOUSTON, Justice (concurring specially).
I concur with the per curiam opinion on all issues addressed. I write specially, however, for I would address the final issue raised by Charter, which the per curiam opinion did not address because the punitive damages award was being reversed.
Does the imposition of punitive damages in cases based on causes of action accruing prior to June 11, 1987,[4] confer upon jurors a degree of discretion so fraught with ambiguity, uncertainty, and unpredictability as to violate Charter's rights to due process of law as guaranteed by the United States and Alabama Constitutions?
This issue was properly preserved in the trial court, for the trial court gave Charter "an exception [to its instruction on punitive damages] on all grounds." After that, when Charter attempted to articulate its *914 objections, the trial court stated, "Well let the [record] reflect that I wouldn't let you say any more about [punitive damages]. You've made your exception on the issue of punitive damages."
The trial court's instruction as to punitive damages was as follows:
"Under certain circumstances the Plaintiff would be entitled to recover punitive damages ... [P]unitive damages are exemplary damages. They're designed to punish a defendant for the purpose of deterring the defendant and others from committing similar wrongs in the future. The imposition of these damages is entirely discretionary with you, whether or not you wish to impose them and if so for how much. The law does say that if you impose punitive damages you must take into consideration the character and the degree of the wrong as shown by the evidence in the case and the necessity of preventing similar wrongs in the future." (Emphasis supplied.)
Article I, § 10, of the Alabama Constitution of 1901, provides:
"[N]o person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party."
Article I, § 13, of the Constitution provides in pertinent part:
"[E]very person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law...."
In Alabama, a defendant in a civil action is entitled to due process of law.
"Article I, §§ 6 and 13, Alabama Constitution of 1901, by guaranteeing the due process rights of citizens, and Article I, § 10, by holding inviolate a person's right to defend himself in a civil action to which he is a party, elucidate this state's commitment to protect an individual's right to attain an adjudication on the merits and to afford litigants an opportunity to defend."
Kirtland v. Fort Morgan Authority Sewer Service, Inc., 524 So.2d 600, 605 (Ala.1988). A procedural due process attack on a statute as being void for vagueness is permitted in a civil proceeding under the Alabama Constitution. Ross Neely Express, Inc. v. Alabama Department of Environmental Management, 437 So.2d 82, 84 (Ala.1983); Friday v. Ethanol Corp., 539 So.2d 208, 215-16 (Ala.1988).
I will not address the question of the constitutionality of punitive damages in Alabama under the United States Constitution. From my review of recent cases Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813, 828-29, 106 S.Ct. 1580, 1589, 89 L.Ed.2d 823, 831 (1986); Justice Brennan's special concurrence in Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., ___ U.S. ___, ___, 109 S.Ct. 2909, 2923, 106 L.Ed.2d 219, 241 (1989), which was joined by Justices Marshall, Stevens, and O'Connor; Chief Justice Rehnquist's blistering dissent in Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632, 651 (1983); and especially Justice O'Connor's opinion concurring in part and concurring in the judgment in Bankers Life & Cas. Co. v. Crenshaw, 486 U.S. 71, 86, 108 S.Ct. 1645, 1654, 100 L.Ed.2d 62, 77 (1988)I doubt that our method of awarding punitive damages could withstand a procedural due process attack as being void for vagueness, if that vagueness doctrine is extended to civil litigation involving punitive damages. The void for vagueness doctrine is usually applied to criminal statutes in the federal courts, but it also has been applied to civil statutes (Jordan v. DeGeorge, 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886, 892 (1951)) and is applied in the civil law in the context of first amendment free speech issues (Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222, 226-28 (1972)). If the United States Supreme Court extends the void for vagueness doctrine to the procedure for assessing punitive damages awards, it is likely that Alabama's method of awarding punitive damages will be stricken as violative of procedural due process, for a jury, as factfinder whose role as factfinder on the issue of punitive damages is part of the jury trial process to be preserved "inviolate" *915 under the Alabama Constitution, has a standardless discretion as to what penalty (i.e., what punitive damages award) will be imposed; but this is an issue to be resolved by the United States Supreme Court. However, I would have no hesitation in declaring that the standardless discretion as to what punitive damages award will be imposed in Alabama violates the guarantee of procedural due process under the Alabama Constitution, for, as previously stated, the void for vagueness doctrine under the Alabama Constitution applies to civil proceedings (Ross Neely Express, Inc. v. Alabama Department of Environmental Management, supra; Friday v. Ethanol, supra); and I believe that the Alabama Constitution (as Chief Justice Marshall believed regarding the United States Constitution[5]) is "a rule for the government of courts, as well as of the legislature." (Emphasis in original.)
In my opinion, the constitutional void-for-vagueness doctrine bridled, restrained, checked, and governed a jury's right to award punitive damages, if a jury had an unbridled, unrestrained, unchecked, and ungoverned right at common law (and I cannot find that it did); and imposed upon this Court and/or the Legislature a duty to promulgate meaningful standards for a jury to follow in setting the amount of a punitive damages award in any civil case. The absence of these meaningful standards would result in the deprivation of property rights without due process of law. "`[W]e must preserve the reliability of the fact finding process for adjudging liability and, at the same time, improve the reliability of the [punitive] damages assessment process in order to fit the punishment (the amount of punitive damages) to the offensive conduct and the offender.'" (Emphasis in original.)
In so saying, this Court in Green Oil Co. v. Hornsby, 539 So.2d 218, 223 (Ala.1989) (quoting Justice Jones's special concurrence in Ridout's-Brown Service, Inc. v. Holloway, 397 So.2d 125, 127-28 (Ala. 1981)), acknowledged as a problem Justice Jones's articulated deficiency in our assessment of punitive damages in Alabama.
We have attempted to deal with the issue of the reliability of punitive damages assessments by post-trial review only. See Hammond v. City of Gadsden, 493 So.2d 1374, 1378 (Ala.1986); Green Oil Co. v. Hornsby, 539 So.2d at 223-24; and Land & Associates, Inc. v. Simmons [MS. 87-1313, December 22, 1989] (Ala.1989). That attempt does not really address the issue. At one time, I thought that the trial court could determine the amount of punitive damages after a factual determination by a jury that punitive damages should be assessed, see Aetna Life Insurance Co. v. Lavoie, 505 So.2d 1050, 1061-62 (Ala.1987) (Houston, J., concurring specially). If this were so, then post-trial review of a jury's punitive damages assessment would pass constitutional muster.
A jury had no right at common law to determine punishment in a criminal case (see, IV Blackstone's Commentaries, pp. 354-55, 366-69, 371 (1st ed. Reprint), and Crowe v. State, 485 So.2d 351, 363-64 (Ala. Crim.App. 1984), rev'd on other grounds, 485 So.2d 373 (Ala. 1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986)); however, a jury did have the right to award punitive damages at common law even though "[o]ver the years, the doctrine of [common law] punitive damages has been clouded in the confusion" of whether its purpose was to compensate the victim or to punish the wrongdoer. See L. Schlueter and K. Redden, Punitive Damages, § 1.3, p. 12 (2d ed. 1989).
In the American College of Trial Lawyers "Report on Punitive Damages of the Committee on Special Problems in the Administration of Justice" (March 3, 1989), the following appears on pages eight and nine:
"Although the early common law did recognize punitive awards in the civil system as a surrogate for noneconomic losses, *916 they were not recognized for that purpose exclusively. Punitive awards also were recognized as serving the admonitory goal of the civil system in deterring and punishing wrongdoers."
Alabama Constitution 1901, Art. I, § 11, provides: "[T]he right of trial by jury shall remain inviolate." This provision has remained virtually unchanged since the first state constitution was adopted in 1819. The purpose of this provision is to preserve the right to trial by jury as it existed in the English common law, and it was not intended to extend the right of trial by jury beyond what existed prior to the adoption of the first Alabama Constitution. Mayor of Mobile v. Stonewall Insurance Co., 53 Ala. 570 (1875).
Therefore, I do not now believe that our post-trial review of a jury's award of punitive damages cures the constitutionally defective procedure that we now have for submitting a case to a jury where punitive damages are an issue, except in wrongful death cases.[6] The parties are entitled to procedural due process by a properly instructed jury, when a jury demand is made by either party.
Our jury instructions, prior to the changes made in order to comply with Ala. Code 1975, § 6-11-20, enacted in 1987, gave no standards whereby a jury could properly assess the amount of punitive damages. (See Alabama Pattern Jury Instructions, No. 11.03). I recently noted that, for the same conduct, one insurance company and its special agent were punished by a punitive damages award of $21,130.86 (Washington National Insurance Co. v. Strickland, 491 So.2d 872 (Ala. 1985)), and another insurance company and its special agent were punished by a punitive damages award of $2,490,000 (Land & Associates, Inc. v. Simmons [MS. 87-1313, December 22, 1989] (Ala. 1989); see my special concurrence in Land & Associates, slip op. at 21. The instruction given to the juries in those two cases were substantially the same and were substantially the instruction on punitive damages contained in the Alabama Pattern Jury Instructions prior to the 1987 change, and were the same as the instructions given by the trial court in the case now at issue. The juries were instructed that, if they found the requisite conduct by the appropriate standard of proof, they could award no punitive damages, or could award such an amount of punitive damages as would punish the defendant or deter the defendant or others similarly situated. Juries are required to make this determination with no standards to guide them as to what would be an appropriate amount to punish and to deter. Therefore, one jury awards $21,130.86, which is 15½ times the compensatory damages, to punish and deter (Washington National); and another awards $2,490,000, which is 249 times the compensatory damages, to punish and deter (Land & Associates, Inc.)for the same conduct. Even if such a disparity were permitted by the common law, the Alabama Constitution requires that the substance of the law of punitive damages be applied to a person through fair procedures by any tribunal hearing the case. Unless the factfinder is given facts from which it can make a rational decision as to what would punish and deter a particular defendant for its particular conduct, the damages awarded have not *917 been awarded through a fair procedure by the jury hearing the case.
The provision assuring "That the right to trial by jury shall remain inviolate" (Article I, § 11) guarantees that a jury, when demanded by either party, in a cause of action to which parties had a right to trial by jury at common law before the adoption of the first Alabama Constitution, has the right to set the amount of punitive damages that a party must pay when the jury determines, in accordance with the instructions given to it by the trial court, that that party's conduct warrants the imposition of punitive damages. However, the determination of the amount of such punitive damages must be made in accordance with meaningful standards set by this Court or by the Legislature. Unless there are meaningful standards, any jury verdict relating to punitive damages, whether it be for zero dollars or for several million dollars, is flawed and violates the guarantee of procedural due process and is void for vagueness.
Setting standards for post-trial review of a jury's verdict (except in wrongful death cases and in regard to other causes of action that did not exist at common law or as to which a party had no right to a trial by jury at common law), no matter how rational or intelligible such standards may be and no matter how helpful they may be to the trial and appellate courts when a punitive damages award is challenged as being inadequate or excessive, does not comply with this constitutional provision, since the standard by which the jury is to gauge the amount of punitive damages, if any, that it is to award is incomprehensibly vague and unintelligible. The jury is given the unbridled discretion to award no punitive damages or to award an unlimited amount of punitive damages, taking into consideration only the character and the degree of the wrong as shown by the evidence in the case and the necessity of preventing similar wrongs in the future. Under such a "standard," one jury can award $21,130.86 and another $2,490,000 for the same "wrong." This does not comply with the requirement of procedural due process under the Alabama Constitution.
Therefore, I would recommend that the following procedure be applied in all jury cases involving claims for punitive damages and as to which claims a party had a right to trial by jury at common law prior to the adoption of the first Alabama Constitution, which are tried after this opinion is released, but which are based on causes of action that accrued before June 11, 1987, without regard to when the complaints were filed:
A jury will determine the issues of liability, the amount of compensatory damages, and whether the defendant's conduct warrants the imposition of punitive damages. In addition to other jury verdict forms, in common law cases involving punitive damages the following jury verdict form should be given to a jury for each party against whom punitive damages are sought:
"In accordance with the instructions given to us by the trial court, we find that punitive damages (should) (should not) be assessed against (name of party against whom punitive damages are sought)."
In the event that the jury determines that punitive damages should be imposed against one or more defendants, the trial will resume; and evidence of the following, which was not admissible in the trial in chief, shall be admissible upon an offer by any party in accordance with the rules of evidence.[7]
Evidence of the harm that was likely to occur from the defendant's conduct as well as the harm that actually has occurred is relevant. The jury should be instructed that, if it finds that the actual and likely harm is slight, the punitive damages (subject to the other factors hereinafter set out) should be relatively small. If the actual harm and/or likely harm was grievous, the punitive damages (subject to the other factors hereinafter set out) should be much greater.
*918 The duration of the defendant's conduct, the degree of the defendant's awareness of any hazard that his conduct has caused or is likely to cause, any concealment or "cover-up" of that hazard, and the existence and frequency of similar conduct of the defendant are relevant. The jury should be instructed that if it finds that the defendant's offensive conduct was of long duration or was frequently repeated; that the defendant acted with awareness that his conduct was causing or was likely to cause the hazard by which the plaintiff was in fact damaged; or that the defendant concealed or covered up that hazard, then such a finding should increase the amount of punitive damages.
The profitability of the conduct to the defendant is relevant. The jury should be instructed that the punitive damages should remove all profit from the wrongful conduct and should be in excess of the profit, so that the damages would "sting."
The financial position of the defendant is relevant. The jury should be instructed that the amount of punitive damages should "sting" the defendant, considering his financial condition.
All costs of the litigation, including the attorney fees to be paid to the plaintiff's attorney, are relevant; and the jury should be instructed that its award should include all reasonable costs of litigation, so as to encourage injured parties to bring wrongdoers to trial.
If criminal sanctions have been imposed on the defendant for his conduct, this is relevant; and the jury should be instructed that such criminal sanctions should be taken into account in mitigation of the punitive damages award.
If there have been other civil actions against the defendant based on the same conduct and if punitive damages have been assessed against the defendant in those civil actions, this is relevant; and the jury should be instructed that it should consider this in mitigation of the punitive damages award.
I believe that, if these factors are considered by a jury in assessing the amount of punitive damages a defendant should pay, this will improve the reliability of the punitive damages assessment process and will fit the punishment to the offensive conduct of the offender. I believe that by doing this in a bifurcated trial the court could preserve the reliability of the factfinding process for adjudging liability, thereby accomplishing the goal we set in Green Oil Co. v. Hornsby, supra, when we adopted Justice Jones's special concurrence in Ridout's-Brown Service, Inc. v. Holloway, supra.
I believe that this approach will afford procedural due process to all parties against whom punitive damages are sought and will preserve inviolate the right to trial by jury under the Alabama Constitution. I would limit this procedure to cases in which the cause of action accrued prior to June 11, 1987. If the legislation that became effective on that date (see § 6-11-1 et seq., Code 1975), which I have not in any way considered in this special concurrence, provides procedural due process safeguards and preserves inviolate the right to trial by jury, so that it passes constitutional muster, then it should replace the procedure that I advocate herein to uphold the constitutionality of punitive damages awards in common law causes of action.
The post-trial procedures for reviewing punitive damages awards, when those awards are challenged as excessive or inadequate, as set out in Land & Associates, Inc. v. Simmons, supra; Green Oil Co. v. Hornsby, supra; and Hammond v. City of Gadsden, supra, should remain intact.
NOTES
[1] The conversion occurred subsequent to Dr. Weinberg's termination, January 17, 1980. The trial commenced in October 1988.
[2] Developed by Dr. Weinberg and two other people, Recovery from Chemical Dependency, Inc., was a company that proposed sales of treatment programs to hospitals around the country, including hospitals in competition for the same patients that Charter was seeking to treat.
[3] $35,000-$40,000 one year salary for a Ph.D. to develop and implement a similar program at Charter;

$36,000 plus incidental expenses (per diem, airfare, tuition, and other incidental expenses) for a third-party to develop and implement a similar program at Charter;
$50,000-$100,000 for a third-party to develop and implement a similar treatment program at another facility where Charter's administrator had been employed previously; and
$900,000 gross profit generated per year, using the treatment program.
[4] June 11, 1987, was the effective date of Title 6, Chapter 11, Ala.Code 1975.
[5] Chief Justice John Marshall in the seminal case on judicial supremacy, Marbury v. Madison, 5 U.S. (1 Cranch) 137, at 179-80, 2 L.Ed. 60 (1803), reminded the judiciary that "the framers of the constitution contemplated that instrument as a rule for the government of courts, as well as of the legislature." (Emphasis in original.)
[6] The Alabama Wrongful Death Statute (Ala. Code 1975, § 6-5-410) "`creates a single cause of action unknown to the common law.'" Tatum v. Schering Corp., 523 So.2d 1042, 1044 (Ala.1988), quoting Bell v. Riley Bus Lines, 257 Ala. 120, 57 So.2d 612 (1952). But, see, Lawrence T. King's, On Civil Punishment and Tort Reform in Alabama, 20 Cumb.L.Rev. 47, 59 (1989-90):

"A more intriguing [Alabama Constitution] section 13 question is raised by the continued use of the word `remedy' by the Supreme Court of Alabama in referring to wrongful death actions. If the wrongful death statute is, as called, remedial, then the court has construed it in such a manner as to deny the remedy, by permitting the recovery of strictly punitive damages, which are not remedial. In this sense, the action of the court has operated to deny the section 13 guaranty of a remedy for every wrong. No reported case instructs as to the effect of a court decision, rather than a legislative act, abrogating section 13 rights but it appears highly likely that such a decision runs directly afoul of the very purpose of the State constitution." (Emphasis in original.)
[7] A bifurcated trial is also recommended by the American College of Trial Lawyers, "Report on Punitive Damages of the Committee on Special Problems in the Administration of Justice" (March 3, 1989), pp. 18-19.