STEAGALL, Justice.
Tuscaloosa Acoustical Systems, Inc., and JLS Sales, Inc., sued Wayne Moore, individually and doing business as Wayne Moore Contracting Company, alleging breach of contract. JLS Sales also alleged money due for goods sold and delivered, money due on an open account, and money due on an account stated. Moore counterclaimed, alleging money due on an open account and money due for work and labor done. In their answer to the counterclaim, Tuscaloosa Acoustical Systems and JLS Sales denied the allegations of the counterclaim and raised the following defenses: that the money due under the contract had been paid; that Tuscaloosa Acoustical Systems and JLS Sales were due an offset for the amounts claimed in their complaint; and that there had been a failure of consideration in that the work performed was defective.
The case was tried before a jury. At the close of all the evidence, the trial court directed the jury to return a verdict for JLS Sales on its account claims. The jury returned a verdict in the amount of $3,141.97, plus interest, in favor of JLS Sales on the account claims and a verdict in the amount of $14,900, plus interest, in favor of Moore on the counterclaim. Tuscaloosa Acoustical Systems filed a , motion for new trial, which the trial court denied. It now appeals.
Tuscaloosa Acoustical Systems was employed to construct the walls at the Brook-wood Medical Center in Birmingham (the Birmingham project) and at the Paul W. Bryant Conference Center and at the building occupied by the Office of Alumni Affairs in Tuscaloosa (the Tuscaloosa project). Tuscaloosa Acoustical Systems employed Moore as a subcontractor to do the finishr ing work on the interior wall surfaces. The general contractors on both projects subsequently employed additional subcontractors to do the finishing work because Moore's finishing work was not being completed on schedule. The general contractors deducted the expenses of employing the additional subcontractors from the amounts due on Tuscaloosa Acoustical Sys- *1268 terns’ contracts. Tuscaloosa Acoustical Systems then “backcharged” Moore for some of those deductions.
Tuscaloosa Acoustical Systems presented testimony that Moore had gotten behind schedule on both projects, delaying the painters in beginning their work. There was testimony that the painters refused to paint because the work was incomplete or the work that Moore had completed was unsatisfactory. There was also testimony that Moore did not have enough manpower on the job to finish the walls on schedule, forcing the general contractors to employ additional subcontractors.
Moore testified that he was unable to finish the walls on schedule because Tuscaloosa Acoustical Systems had been delayed in hanging the plasterboard. Moore also testified that there was water inside the Bryant Conference Center and that that water caused a delay in hanging the plasterboard. Moore stated that he had been ready to do the finishing work on both projects but that he had had to wait for the electricians to finish their work. At the Bryant Conference Center, Tuscaloosa Acoustical Systems had hung the plasterboard before the electricians completed their work, causing Moore to have to “refinish” his work. Moore testified that the painters on both projects wrongfully criticized his work in order to excuse their delay. Moore testified that he had completed his work at the Brookwood Medical Center and at the Bryant Conference Center and that he had been paid for the work done at the Bryant Conference Center. He stated that he had not completed his work at the Office of Alumni Affairs and that he had not submitted a bill for that portion of the Tuscaloosa project. Moore testified that the backcharges by Tuscaloosa Acoustical Systems were unnecessary and unreasonable and that he should not have been backcharged for the work done by the painters.
The only issue presented for review is whether the jury verdict is so clearly the result of a compromise or mistake or is so contrary to any reasonable hypothesis of fact founded upon the evidence as to mandate a new trial.
The record shows that Moore would have been entitled to $29,900 on his counterclaim against Tuscaloosa Acoustical Systems if he had not been responsible for any of the backcharges. The record further shows that $19,783.50 was deducted from Tuscaloosa Acoustical Systems’ contract with the general contractor at the Bryant Conference Center for the expense incurred by the general contractor in employing additional subcontractors to finish the walls. The general contractor at the Brookwood Medical Center deducted a total of $47,-486.96 from its contract with Tuscaloosa Acoustical Systems. These deductions included $18,539 to finish the wall as part of the original contract; $11,801 for sanding, finishing, and “fire taping”; $4,125.50 for certain work done by East Coast Painters; $7,457.50 for certain other work done by East Coast Painters; and $5,563.96 for work done by Poynter Drywall. Tuscaloosa Acoustical Systems also incurred direct labor costs of $6,447.52 to complete the work at Brookwood Medical Center.
Tuscaloosa Acoustical Systems argues that it is clear that the jury assumed an offset of an even $15,000 and that no mathematical combination of the charges assessed against or incurred by Tuscaloosa Acoustical Systems will result in an offset of an even $15,000.
“The strength of the jury verdict is based upon the right to trial by jury, and a jury verdict is presumed to be correct. This presumption is strengthened by the trial court’s denial of a motion for new trial.” Charter Hosp. of Mobile, Inc. v. Weinberg, 558 So.2d 909, 911 (Ala.1990). See, also, Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988). In G.M. Mosley Contractors, Inc. v. Phillips, 487 So.2d 876 (Ala.1986), this Court stated:
“When a jury is the trier of fact, it is not for the trial judge, nor an appellate court, to attempt to determine with mathematical certainty that all of the various elements of evidence offered by the parties regarding specific costs and credits precisely equal the amount of the jury’s *1269 verdict. We do not have trial by computer, nor do we have post-trial, or appellate, review by the computer. The reviewing court does not substitute its own judgment as to the amount of damages for that of the trier of fact.”
487 So.2d at 879 (citation omitted). A judgment based on a jury verdict will not be reversed unless the evidence clearly indicates that the verdict is plainly and palpably wrong. Bussey, supra.
Based on the foregoing, we conclude that there was sufficient evidence to support the jury verdict and that the judgment thereon was not plainly and palpably wrong; thus, the trial court correctly denied the motion for new trial. Accordingly, the trial court’s judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and ADAMS, JJ., concur.