Otis Dale Mitchum filed a complaint against Coffee County Bank (Bank), seeking to recover $26,115.28 in damages. The case was submitted to the jury on the claims of money had and received and conversion.
The jury returned a verdict in favor of Mitchum and against the Bank. The jury assessed Mitchum's damages at $20,800, plus interest.
The Bank appeals. This case is before this court pursuant to Ala. Code 1975, § 12-2-7(6). We affirm.
When we view the record with the attendant presumptions accorded the jury findings, the following is revealed. Waylon Jones was the owner of Waylon Jones Motor Company (Jones Motor). Mitchum entered into an agreement with Jones Motor that Jones Motor was to sell Mitchum's motor home on consignment. The motor home was sold to Rinzol McIntosh, and the net proceeds from the sale were $26,115.28.
On April 11, 1990, the proceeds from the sale to McIntosh, along with other company receipts, were deposited into the Jones Motor general operating account maintained with the Bank, with a notation on the deposit slip showing that $26,115.28 was derived from the McIntosh sale. On the same date, $981.38 from the McIntosh sale was deposited into the Jones Motor Special Account maintained with the Bank, with a notation on the deposit slip indicating that these funds were derived from the McIntosh sale.
Jones Motor maintained floor plan financing with the Bank, under which a trust receipt for the purchase of a vehicle would be signed with the Bank. When the vehicle was sold, the money would be deposited into the Jones Motor general operating account, and then a check would be written to the Bank to pay off the vehicle which had been sold.
On April 13, 1990, the floor plan agreement between Jones Motor and the Bank was due and payable in full. In fact, it was in default. The security agreement and note contained a provision that the Jones Motor accounts with the Bank could be set off in payment of the debt. On April 14, 1990, the Bank froze all *Page 150 
the Jones Motor accounts and dishonored some checks.
These accounts were actually transferred in payment of the indebtedness on the morning of April 16, 1990, after the loan committee met and declined to renew the floor plan financing for Jones Motor and after the Bank officials visited with Jones at his place of business.
Jones testified that, at this initial morning meeting, he told the Bank officials that over $20,000 in his account belonged to Mitchum because he had sold Mitchum's motor home and had deposited the proceeds of the sale into his account at the Bank. Jones also testified that the Bank officials told him that because the money was in the Jones Motor account, the Bank had a right to it.
There was a meeting between Jones, his attorney, and the Bank officials on that same afternoon. At that time, the Bank officials delivered a document to Jones, which outlined the amount of funds from the Jones Motor accounts that had been applied to the indebtedness with the Bank. Jones testified that, once again, he informed the Bank officials that over $20,000 of the funds belonged to Mitchum.
After Jones informed Mitchum of what had occurred, Mitchum's attorney wrote a letter to the Bank. When the Bank declined to remit any funds to Mitchum, suit was filed in the instant case.
The first issue which must be addressed is whether the Bank had the right to use the proceeds from the sale of the Mitchum motor home, which were deposited into the Jones Motor general operating account, as a set off against the indebtedness of Jones Motor. We hold that the Bank did not have such a right.
Initially, we note that when funds are deposited into a general account, the actual legal title to these funds is in the bank, with a debtor-creditor relationship existing as to the amount of the deposit. State Nat'l Bank of Decatur atOneonta v. Towns, 36 Ala. App. 677, 62 So.2d 606 (1952).
When a bank loans money to its depositor, mutual indebtedness comes into existence. Rainsville Bank v. Willingham,485 So.2d 319 (Ala. 1986). When the loan matures, the bank may apply the funds contained in the general account to the indebtedness.Rainsville Bank, 485 So.2d 319. However, the bank may not apply funds on deposit to the indebtedness in situations where the customer has made the deposit for a special purpose, known to the bank. Rainsville Bank, 485 So.2d 319.
When a special deposit is made, the debtor-creditor relationship does not come into existence, and the bank acquires no title to the funds. First City Nat'l Bank of Oxfordv. Long-Lewis Hardware Co., 363 So.2d 770 (Ala. 1978). In the case of a special deposit, the funds remain the property of the depositor or the beneficiary of the special deposit. First CityNat'l Bank of Oxford, 363 So.2d 770. A special deposit exists when funds are placed into an account for a specific and particular purpose, or to be paid to a particular person. FirstCity Nat'l Bank of Oxford, 363 So.2d 770.
In the instant case, the president of the Bank testified that, although the Jones Motor accounts were frozen on April 14, 1990, the funds were not transferred to be applied to the indebtedness until after the Bank officials met with Jones on the morning of April 16, 1990. As previously noted, Jones testified that he told the Bank officials at this initial meeting on April 16, 1990, that over $20,000 of the funds in his account were proceeds from the sale of the Mitchum motor home and that this money was for the payoff of the motor home. (The motor home was financed through American Bank in Geneva, and the payoff would have been $20,800.)
Although the president of the Bank disputes that he was ever told this, it appears that there is sufficient evidence that the Bank was made aware, prior to the actual transfer of thefunds to be applied to the indebtedness, that over $20,000 of the funds in the Jones Motor account had been placed in the account for a "special purpose," i.e., the funds were the proceeds from the sale of the Mitchum motor home, and this money was to pay off the motor home. Since these funds were placed in the Jones Motor account *Page 151 
for a special purpose made known to the Bank prior to thesetoff, it follows, based upon the above-cited authorities, that this was a special deposit and that the Bank acquired no title to the funds. These funds remained the property of Mitchum, the beneficiary of the special deposit. First CityNat'l Bank of Oxford, 363 So.2d 770.
As previously noted, this case was submitted to the jury on the claims of money had and received and conversion. The dispositive issue is whether the trial court committed reversible error when it refused to grant the Bank's motion for a directed verdict on these two counts and allowed the case to go to the jury on these two counts.
The essence of the theory of money had and received was set out by our supreme court in Foshee v. General Telephone Co. ofthe Southeast, 295 Ala. 70, 322 So.2d 715 (1975). The supreme court stated that in such a case, "facts can be proved which show that defendant holds money which in equity and good conscience belongs to plaintiff or was improperly paid to the defendant because of mistake or fraud." Id. at 72, 322 So.2d at 717. In order to prevail under such a theory of law, Mitchum must show that he had some right or title to the property. Holtv. First Nat'l Bank of Mobile, 418 So.2d 77 (Ala. 1982). As discussed above, the proceeds from the sale of the Mitchum motor home, which were deposited into the Jones Motor account at the Bank, remained the property of Mitchum because he was the beneficiary of the special deposit.
In order to prevail under the conversion claim, Mitchum must prove that there was either a wrongful taking, a wrongful detention or interference with another's property, an illegal use or misuse of another's property, or an illegal assumption of ownership. Gillis v. Benefit Trust Life Insurance Co.,601 So.2d 951 (Ala. 1992). It is generally accepted that an action for the conversion of money will not lie unless there is "specific money capable of identification." Gillis, 601 So.2d at 952. This requirement has become complicated because of the continuing development of our economic system and was addressed in Lewis v. Fowler, 479 So.2d 725, 726 (Ala. 1985), as follows:
 "Now, in conversion cases, the courts are not confronted so much with a particular piece of money, i.e., a coin or a bill, but with identified or segregated sources from which money has come or types of accounts into which money has been deposited."
(Emphasis added.)
Mitchum presented evidence that the proceeds from the sale of his motor home to McIntosh were identifiable. The deposit slips, showing that the $26,115.28 was deposited into the Jones Motor accounts at the Bank on April 11, 1990, with the notation of "McIntosh," were introduced into evidence. The deposit of these funds is clearly identified by the source from which the money was acquired. Based upon the above-cited authorities, a claim for conversion, as determined by the jury, does not require reversal.
Based upon the foregoing, we find no error on the part of the trial court in allowing the case to proceed to the jury on these two counts.
The Bank, through able and distinguished counsel, additionally urges this court to reverse the jury verdict and resulting judgment because of the trial court's actions in giving certain jury charges or oral instructions and in refusing to give certain other requested jury charges.
We have carefully reviewed the Bank's contentions. It is the responsibility of this court to look at the entire jury instructions, both the judge's oral charge as well as the written requested charges. Reversal is mandated only when the instructions, viewed in their entirety, are prejudicial.Hargress v. City of Montgomery, 479 So.2d 1137 (Ala. 1985);Underwriters Nat'l Assurance Co. v. Posey, 333 So.2d 815 (Ala. 1976); Park Supply Co. v. Sunki, 386 So.2d 462 (Ala.Civ.App. 1980).
In view of what this court has stated above as to the dispositive issue, regarding the counts of money had and received and conversion, we find no error relating to the *Page 152 
entire jury instructions that is so prejudicial as to require reversal. Any error committed falls within the purview of Rule 45, A.R.A.P., i.e., error without injury.
Based upon the foregoing, this case is due to be, and is, affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur. *Page 530