Wayne Jones sued Citizens Bank of Moulton, alleging conversion and negligence or wantonness in connection with the disbursement of proceeds from the sale of property. The case was tried before a jury, which returned a verdict in favor of Jones for $34,500, including $19,500 in compensatory damages and $15,000 in punitive damages. Citizens Bank appealed to the Supreme Court, which deflected the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
The following evidence was adduced at trial. Jones testified that in September 1987, his father-in-law, R.M. Bradford, wanted a bank loan but was unable to get one, apparently because of a poor credit history. According *Page 739 
to Jones, Bradford asked Jones to secure a loan from Jones's bank, Colonial Bank. Bradford and his wife, Ophelia, conveyed about eight acres of unimproved property to Jones and his wife, Tonya, to enable Jones to secure the loan. A deed memorializing the conveyance is included in the record. In addition, Jones apparently had the deed recorded. Using the property as collateral, Jones borrowed $9,000 from Colonial Bank. He testified that he kept $6,000 of the loan money and gave Bradford $3,000.
Jones said he and Bradford had agreed that each would pay his share of the loan payment as each annual payment came due. However, Jones said, he paid back the loan from Colonial Bank by himself. Bradford testified that he repaid Jones some of the money he owed him; however, there is no other evidence of that repayment.
Jones testified that he and Bradford then agreed that because Jones had made the loan payments to Colonial, he would buy the property from Bradford for $12,000, but deduct from the purchase price the $3,000 plus interest that Bradford owed him for paying back the loan. Jones also testified that he has never paid Bradford the balance of what he owed for the land.
Jones moved a trailer onto the land, and he and his family began living there. Jones said he put in a driveway, a septic tank, and water lines. He also added a room to the trailer and built a patio adjoining the trailer. He said he paid $3,000 for the improvements made to the property.
Jones testified that late in the summer of 1989, Bradford told him that Bradford was behind on his mortgage payments, and that Wayne Gentry, president of Citizens Bank, was going to have to foreclose on his house. Gentry testified that he suggested to the Bradfords that they sell the eight acres of vacant land and use the proceeds from the sale to pay on the loan. Bradford asked Jones if he would sell that property, adding that Jones would get back the money he had put into the property. Jones testified that the money he had put into the property included the $3,000 in improvements he had made and the $3,000 plus interest he had paid on the Colonial loan for Bradford. Jones said he agreed to sell the property, provided he got his money up front so that he could move.
Bradford approached Dr. William Borden about purchasing the eight acres, and Borden offered $12,000 for the property. Bradford turned down the offer, believing he could get more money. Gentry said he called Borden and asked whether he would buy the land for $15,000. Borden agreed, and Citizens Bank financed the loan for Borden to buy the property.
On October 5, 1989, Jones and his wife, Tonya, signed the deed conveying the property to Borden. Jones testified that he talked with Borden, who told him he was going to finance the purchase of the property through Citizens Bank. Jones said he talked with Gentry at Citizens Bank before he signed the deed conveying the land to Borden, to ensure that he and his wife would receive the $15,000 check. He said that Gentry assured him that the check would be made out to Jones and his wife. However, Jones said, Gentry told him that Jones was not to get all of the money. Jones said that he explained to Gentry how much money he was owed and that he would take that amount out of the $15,000 and give the rest to Bradford. Bradford was to pay Gentry out of the remainder of the money, according to Jones.
However, neither Jones nor his wife received payment for the property. Jones said that on the afternoon he signed the deed conveying the land to Borden, he made a telephone call to Gentry to find out when he would be paid. Gentry told him there was a problem with the abstract, Jones said. Jones testified that he took Gentry the abstract he got when Bradford deeded him the land in 1987. At that time, Jones said, Gentry told him he should get his check "in a couple of days." Jones said that after a few days had passed and he still had not been paid, he spoke with Gentry again. Gentry then told Jones that the abstract was still not ready. The next day, Jones said, he went to the bank and talked with Gentry, who told him the whole amount of the sale had been applied to Bradford's loan. When he objected, *Page 740 
Jones said, Gentry told him that was between Jones and Bradford.
Portions of Gentry's testimony conflict with Jones's testimony. Gentry testified that he never talked with Jones until after payment was made to the Bradfords. Gentry did say, however, that he saw the deed for the property conveyed to Borden on October 5, 1989, several days before payment was made on the Bradfords' debt. At that time, he said, he found out that the Bradfords did not own the property and that they had no ownership interest to sell. Even though he knew the Bradfords did not own the property, Gentry said, he continued to rely upon them — not Borden or the Joneses — to tell him how to disburse the proceeds from the sale.
Gentry also testified that the bank had a significant interest in being paid by the Bradfords. He said that of the $15,000 the bank had lent to Borden, $13,900 was written back to the bank as the interest and principal the Bradfords owed the bank. The remaining $1,100 was given to Ophelia Bradford in cash.
R.M. Bradford testified that he and Jones had agreed that if Jones made any improvements to the property and then the Bradfords had to sell the property later, Bradford would pay Jones for the improvements. Bradford conceded that Jones was to get some of the $15,000.
Citizens Bank contends that the trial court erred in overruling its motion for a directed verdict as to the conversion count. Specifically, the bank argues that because Jones never had possession of the $15,000 in dispute, he never acquired title to the money and had not entrusted the money to the bank. Therefore, the bank says, there can be no conversion.
To prove the tort of conversion, Jones had to show that there was either a wrongful taking, an illegal assertion of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property.Drennen Land Timber Co. v. Privett, 643 So.2d 1347
(Ala. 1994); Coffee County Bank v. Mitchum, 634 So.2d 148
(Ala.Civ.App. 1993).
"It is generally accepted that an action for the conversion of money will not lie unless there is 'specific money capable of identification.' " Coffee County Bank, supra, at 151. As our economic system has become more sophisticated, making use of devices such as checks and electronic transfers of money, the idea of "specific money capable of identification" has become complicated. The Alabama Supreme Court has recognized the complication, holding that, "[n]ow, in conversion cases, the courts are not confronted so much with a particular piece of money, i.e., a coin or a bill, but with identified or segregated sources from which money has come or types of accounts into which money has been deposited." Lewis v. Fowler,479 So.2d 725, 726 (Ala. 1985).
In this case, the $15,000 at issue is identifiable as the money from the loan that Citizens Bank made to Borden for the purchase of the property. Because the money at issue here comes from an identifiable source, i.e., the loan given to Borden to purchase the property from the Joneses, it is capable of being converted. See, e.g., Lewis, supra.
The record shows that Borden purchased the land from the Joneses, who had been deeded the land by the Bradfords two years earlier. The record also shows that Gentry, as president of Citizens Bank, knew the Bradfords did not own the property bought when Gentry applied the proceeds from the sale to the Bradfords' loan. Borden purchased the property from the Joneses; the $15,000, therefore, belonged to the Joneses. During the trial, Jones presented evidence that the bank used the proceeds from the sale of his property to pay off the debt on the Bradfords' loan, even though Gentry knew that the conveyed property did not belong to the Bradfords at the time of the sale. From this evidence, the jury could have concluded that the bank wrongfully detained and interfered with Jones's property and was liable to him for conversion. Therefore, the trial court properly denied Citizens Bank's motion for a directed verdict as to the conversion count. *Page 741 
Citizens Bank also argues that the jury's verdict was erroneous as to the assessment of compensatory and punitive damages. The jury awarded Jones $19,500 in compensatory damages and $15,000 in punitive damages. The bank argues that, at most, Jones's compensatory damages would be $6,000 plus interest from the date of conversion.
Jury verdicts are presumed to be correct. Eubanks v. Hall,628 So.2d 773 (Ala.Civ.App. 1993). This presumption is strengthened when the trial court denies a motion for a new trial. First Alabama Bank of South Baldwin v. Prudential LifeIns. Co. of America, 619 So.2d 1313 (Ala. 1993). An appellate court will not reverse a judgment based on a jury verdict unless, after allowing all reasonable presumptions of correctness, the preponderance of the evidence is against the verdict and is so decided as to clearly convince the appellate court that the verdict is wrong. Delchamps, Inc. v. Larry,613 So.2d 1235 (Ala. 1992).
There is no dispute that Borden paid $15,000 for the property. Evidence showed that the deed to the property was in the Joneses' name. Gentry said that when he saw the deed on October 5, 1989, he realized that the Bradfords had no ownership interest in the property; however, he paid the Bradfords anyway. Whether Jones had an agreement with Bradford regarding the disbursement of the sale proceeds is a different issue from whether the bank should have given the sale proceeds to Jones instead of Bradford. Therefore, the evidence supports a finding that Jones was entitled to the entire $15,000 paid for the property.
Furthermore, the damages recoverable for conversion include interest of six percent per year from the time of the conversion to the time of trial. Charter Hospital of Mobile v.Weinberg, 558 So.2d 909 (Ala. 1990); Edwards v. Vanzant,492 So.2d 990 (Ala. 1986). The conversion in this case occurred in October 1989; the trial was in January 1995. Interest on the $15,000 during that time, at six percent annually, comes to at least $4,800. Therefore, the evidence presented in this case supports the jury's verdict awarding Jones $19,500 in compensatory damages.
The evidence also supports the jury's award of $15,000 in punitive damages. For punitive damages to be awarded for conversion, the conversion must be done in known violation of the owner's rights. Charter Hospital of Mobile, supra, at 912. Conflicting evidence was presented as to whether Jones spoke with Gentry about receiving the payment for the property before Gentry paid on the Bradfords' loan using the sale proceeds. However, the credibility of the testimony presented by the witnesses is for the jury to determine. Charter Hospital ofMobile, supra, at 913. The jury's verdict is strenghtened, however, by the undisputed evidence that Gentry had seen the deed showing that the Joneses owned the property Borden bought and that Gentry was aware that the Bradfords did not have an ownership interest in the property before he used the sale proceeds to pay the Bradfords' debt. Based on this evidence, the jury could reasonably conclude that the conversion was done in known violation of Jones's rights. Therefore, the jury's verdict as to the punitive damages was also correct.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES, and CRAWLEY, JJ., concur.