Satye B. Moore and her son, Thaxton S. Moore, Jr., sued Liberty National Life Insurance Company and its agent, Albert Craig Hidy, alleging that Hidy had taken out loans against two of the Moores' life insurance policies without the Moores' knowledge or permission. The two policies, purchased by Mrs. Moore, insured her son's life. Through their original complaint and two subsequent amended complaints, the Moores basically asserted fraud, misrepresentation, and conversion claims against Liberty National. The two amended complaints followed the trial court's dismissal of their first complaint and a refusal to set aside that dismissal. After hearing arguments for a third time on the motion to dismiss and after reviewing the evidence that was presented, the trial court, pursuant to Rule 12(b)(6), A.R.Civ.P., treated Liberty National's motion to dismiss as a motion for summary judgment. The trial court entered a summary judgment against the Moores, and they appealed.
The first issue that the Moores raise is whether the trial court erred in treating Liberty National's motion to dismiss as a motion for summary judgment. In its Rule 12(b)(6) motion, Liberty National asserted *Page 834 
that the Moores failed to state a claim upon which relief could be granted.
Rule 12(b), A.R.Civ.P., provides, in part:
 "If, oil a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ."
The record clearly indicates that matters outside the pleadings were presented to the trial court and that the matters were considered by the trial court in making its decision. For instance, in opposition to Liberty National's motion to dismiss, the Moores submitted their own affidavits, as well as correspondence between them and Liberty National. Also, the Moores submitted exhibits consisting of Liberty National's records regarding the loan transactions and filed a brief in response to Liberty National's motion to dismiss.
Furthermore, both the Moores and Liberty National presented oral arguments, which were transcribed and which appear in the record. We note that briefs and arguments of counsel, when submitted to and considered by a trial court in ruling upon a Rule 12(b)(6) motion, have been held sufficient in themselves to be "matters outside the pleadings" that would convert a Rule 12(b)(6) motion into one for summary judgment. See Sims v.Lewis, 374 So.2d 298 (Ala. 1979). We hold that the trial court correctly treated Liberty National's motion to dismiss as a motion for summary judgment.
Once matters outside the pleadings are considered, so that a motion to dismiss must be treated as a motion for summary judgment, the moving party's burden changes, and it is obliged to demonstrate that there exists no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P.; see Hightower Co. v. UnitedStates Fid. Guar. Co., 527 So.2d 698 (Ala. 1988); Green v.Bradley Constr., Inc., 431 So.2d 1226 (Ala. 1983).
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the nonmovant must present substantial evidence, i.e., "evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.,547 So.2d 870, 871 (Ala. 1989).
With these principles in mind, we now turn to our analysis of the second issue raised by the Moores: Whether the trial court erred in entering a summary judgment for Liberty National.
The Moores, in their complaint, asserted a number of tort claims against Liberty National, including fraud and conversion. An essential element of each of the claims asserted by the Moores is damages. In order to defeat Liberty National's motion, the Moores had the burden of presenting substantial evidence that they were damaged by Liberty National's actions. However, they did not present any evidence that they had suffered damage.
The record indicates these undisputed facts: Liberty National's agent, Albert Craig Hidy, forged Thaxton Moore's signature and effected unauthorized loans against two Liberty National life insurance policies owned by the Moores. Hidy's actions were not known by Liberty National until the unauthorized loans were discovered by the Moores and brought to the attention of Liberty National. After learning of Hidy's scheme, Liberty National removed the loans from the Moores' policies, restored all benefits and values to the policies, and informed the Moores of the steps it had taken to remedy the unauthorized loans. Thereafter, the Moores filed this suit, alleging that they had been damaged as a result of the unauthorized loans, claiming specifically that they had been deprived of the cash surrender value of the policies *Page 835 
and had had a decreased death benefit available during the time that the policies were encumbered by the unauthorized loans.
It is undisputed that the Moores made no claim on either policy, and that, consequently, they were denied no benefits under the policies. Furthermore, the Moores requested no loan against either policy; therefore, no loan proceeds or loan benefits were denied them. The Moores made no attempt to cash in either policy, so they lost no surrender values. The Moores never paid any interest on the unauthorized loans.
For the Moores to prevail on a claim that they were damaged as a result of lost use of the cash surrender value or by a reduction in the death benefits of their life insurance policies, they must show some loss, or some denial of the use or enjoyment, of those benefits. Here, the Moores claim damages solely on the theory that if they had wanted to make a claim or loan during the period when the policies were encumbered by the unauthorized loans, and if Liberty National had not discovered that the loans were, indeed, unauthorized, then Liberty National would have denied them a loan or a claim and they would have been denied the use and enjoyment of their policies. However, it is undisputed that none of these events occurred.
Here, the Moores' allegations that they suffered damage are based strictly on speculation — what might have happened, as opposed to what did happen. However, a finding of damage cannot be based on speculation. It is fundamental that in order to recover damages, a plaintiff must present evidence of actual damage. See Industrial Chem. Fiberglass Corp. v. Chandler,547 So.2d 812 (Ala. 1988); Skipper v. South Cent. Bell Tel.Co., 334 So.2d 863 (Ala. 1976); C. Gamble, Alabama Law ofDamages, § 7-1 (2d ed. 1988). Here, viewing the evidence before the court in the light most favorable to the Moores, we conclude that there was no evidence that the Moores incurred damage upon which a recovery could be based.
The trial court correctly concluded that the undisputed evidence showed that the Moores were never denied the use of their policies and that they never "suffered a nickel's worth of loss." The trial court correctly entered the summary judgment for Liberty National.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.