Vera and Roger Willingham appeal from a summary judgment in favor of the defendants, United Insurance Company of America and its agents Wayne Hester and Mark Ross. The Willinghams sued United, Hester, and Ross, alleging fraud, breach of contract, negligence, conversion, and unjust enrichment. In their brief, however, the Willinghams make arguments only with regard to the fraud and conversion claims. Accordingly, the summary judgment with regard to the other claims is affirmed. Rule 28, A.R.App.P.
A summary judgment is proper when the motion and the materials submitted in support thereof, and those presented in opposition thereto, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), A.R.Civ.P. To defeat a properly supported motion for summary judgment, the nonmoving party must present substantial evidence supporting its claims and creating a genuine issue of fact. Ala. Code 1975, § 12-21-12. To satisfy the "substantial evidence test," the nonmoving party is required to present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). "[O]n review of a summary judgment, we must view all the evidence in a light most favorable to the nonmovant and we must entertain all reasonable inferences from the evidence in favor of the nonmovant." Lee v. City of Gadsden, 592 So.2d 1036, 1038
(Ala. 1992).
The relevant evidence, considered in a light most favorable to the Willinghams, shows: The Willinghams were the foster parents of four children: T.S., T.C., A.S., and J.S. In 1987 Mark Ross, an agent of United, contacted the Willinghams and offered to sell them a $5,000 life insurance policy on the life of T.S. Ross filled out the application, and Mrs. Willingham signed on behalf of herself and her husband. While Ross was aware that the Willinghams were T.S.'s foster parents, he indicated on the application that they were T.S.'s mother and father.
In 1988 Hester, another United agent, contacted the Willinghams and offered to sell them life insurance policies on the lives of T.C., A.S., and J.S. Hester filled out the applications, and Mrs. Willingham signed them. Hester later added the label "mother" next to Mrs. Willingham's signature.
The United agents assured the Willinghams that the policies would cover foster children. Accordingly, the Willinghams paid premiums on the policies from the time they made the applications until they later came to believe that the policies were invalid.
In September 1989 an agent of Life of Georgia Insurance Company contacted the Willinghams and offered to sell them insurance policies on the lives of the four children. When the agent learned that the Willinghams were the children's foster parents, he informed them that Life of Georgia would not write life insurance on foster children. Mrs. Willingham also contacted other insurance companies, and they informed her that they would not write life insurance policies on foster children.
Having become suspicious regarding the validity of the life insurance policies, Mr. Willingham contacted James Langcuster, a district manager for United. When asked whether United would write life insurance policies on foster children, Langcuster said that it would not. In response to the Willinghams' demand for a refund of their premium payments, Langcuster stated that he would first have to consult with United's attorney.
The Willinghams testified that Langcuster later contacted them and informed them that the policies would be placed under a "Loving Care Program." Langcuster testified that he submitted the question to United's legal department. He was informed that United would honor the policies on the Willinghams' foster children. Langcuster denied any discussion of a "Loving Care Program," but he stated that he informed the Willinghams that *Page 330 
the policies would be honored. It is undisputed that none of the children has died and that no claims have been made on the policies insuring their lives. However, believing that the policies were invalid, the Willinghams stopped making premium payments on them.
While Hester knew that life insurance policies had to be supported by an insurable interest, he did not know that United would not write policies on foster children. However, he never inquired as to whether a foster parent and foster child relationship was sufficient to support an insurable interest. An internal memorandum directed United's underwriters not to write insurance policies on foster children. This memorandum was circulated only to underwriters and not to sales agents. Hester and Ross testified that they did not know that United had decided not to write such policies.
 I. The Fraud Claim
The Willinghams argue that the trial court erred in entering the summary judgment in favor of United. They allege that United and its agents fraudulently represented to them that the life insurance contracts insuring the lives of the foster children were valid and enforceable. They argue that they presented substantial evidence to defeat United's properly supported motion for summary judgment on their fraud claim.
In order to prove their fraud claim, the Willinghams would have been required to show that United made a false representation concerning an existing material fact, that they relied on that representation, and that they suffered damage as a proximate result of such reliance. Harmon v. MotorsInsurance Corp., 493 So.2d 1370, 1373 (Ala. 1986). United, however, argues that the Willinghams would also have been required to prove the additional elements of promissory fraud. Specifically, United argues that the Willinghams would have had to prove that United, at the time the alleged misrepresentation was made, did not intend to perform the act promised, and that United, at the time, had the intent to deceive. General MotorsAcceptance Corp. v. Covington, 586 So.2d 178 (Ala. 1991). We conclude that this is not a case of promissory fraud. The alleged misrepresentation had to do with the validity of the life insurance policies at the time they were sold and not whether United intended to perform the promises embodied in the policies.
The evidence shows that United's agents represented to the Willinghams that the life insurance policies would cover foster children. Mrs. Willingham testified that she specifically asked one of the agents whether United could write valid life insurance policies on the lives of foster children. The agent told her that the policies were valid and that they would cover the children and that benefits would be paid by the company in the event a claim was made.
United does not deny that its agents made these statements to the Willinghams. Rather United argues that when the policies were issued, they were valid in all respects. United further argues that even if the policies were not supported by an insurable interest there still was no fraud because United agreed to honor the policies.
The first issue with which we are presented is whether the relationship between the Willinghams and their foster children was sufficient to create in the Willinghams an insurable interest in the lives of their foster children. If the relationship was not sufficient to create an insurable interest, then we must determine whether there were specific circumstances of this relationship that could give rise to an insurable interest. The relationships or circumstances that can give rise to an insurable interest are set out in Ala. Code 1975, § 27-14-3(a):
 "(a) Insurable interest with reference to personal insurance is an interest based upon a reasonable expectation of pecuniary advantage through the continued life . . . of another person and consequent loss by reason of his death . . . or a substantial interest engendered by love and affection in the case of individuals closely related by blood or by law."
Although this Court has not directly addressed the issue of whether the relationship between foster parents and a foster child is, in and of itself, sufficient to give rise to an *Page 331 
insurable interest, we now conclude that the language of § 27-14-3(a) does not allow for such a construction. The second part of the statutory definition of an insurable interest is "a substantial interest engendered by love and affection in thecase of individuals closely related by blood or by law." §27-14-3(a). (Emphasis supplied.) While the Willinghams had been entrusted by the state with the care of these four foster children, the Willinghams were not related to the children either by blood or by law. Therefore, the second circumstance set out in the quoted portion of § 27-14-3(a) cannot be the basis for finding an insurable interest.
We further conclude that United presented no evidence of circumstances that would invoke the first of the two statutory bases. That is, there is no evidence of circumstances that would give rise in the Willinghams to a reasonable expectation of pecuniary advantage through the continued life of the foster children and a consequent loss by reason of their death. There is no evidence that the Willinghams had any expectation that all of the foster children would even continue to live with them.[1] Moreover, there is no evidence that the Willinghams should have reasonably expected a pecuniary loss by reason of the death of one of the children. In an internal memorandum concerning the insurability of foster children, United's chief underwriter stated: "These children are wards of the state and foster parents have no legal rights over them. No state would refuse to bury them." (Emphasis in original.)[2]
We hold that absent special circumstances, such as dependency or financial responsibility, the relationship between a foster parent and a foster child is not sufficient to create in the foster parent an insurable interest in the life of the foster child.[3] Because there was no evidence of any such special circumstances before the trial court, we conclude that the policies issued by United insuring the lives of the Willinghams' foster children are void due to a lack of an insurable interest.
United next argues that its agents did not make a misrepresentation to the Willinghams, because, it says, it agreed to honor the insurance policies. We conclude that United's alleged reaffirmation of its agreement to pay on the policies cannot be made binding against United and therefore cannot be set up as a defense to a fraud claim.
In Liberty National Life Insurance Co. v. Weldon, 267 Ala. 171, 100 So.2d 696 (1957), this Court addressed the validity of an insurance policy taken out by a woman to insure the life of her deceased husband's niece. After concluding that the policy in question was not supported by an insurable interest, the Court further concluded that life insurance policies that are not supported by insurable interests are illegal and void because they are repugnant to public policy. 267 Ala. at 183,100 So.2d at 705.
In Bell v. National Life Accident Insurance Co.,41 Ala. App. 94, 123 So.2d 598 (1960), the Court of Appeals considered whether the doctrine of estoppel can apply to make enforceable a life insurance policy that is otherwise void because of a lack of an insurable interest. The Court held:
 "Our courts have consistently held that a contract of life insurance issued to one who has no insurable interest in the life of the insured is void ab initio, because its issuance is against public policy. We are of the opinion the doctrine of estoppel will not apply to make enforceable that which is illegal and void in its inception."
41 Ala. App. at 99, 123 So.2d at 601. (Emphasis supplied.)See also, Alabama Gold *Page 332 Life Insurance Co. v. Mobile Mutual Insurance Co., 81 Ala. 329,1 So. 561 (1887); American Equitable Assurance Co. v. PowderlyCoal Lumber Co., 225 Ala. 208, 142 So. 37 (1932).
In light of the cases discussed above, we conclude that even if United reaffirmed its promise to pay on the Willinghams' policies in such a way that would otherwise give rise to an estoppel, there would still be no way for the Willinghams to enforce that promise against United. In fact, United could not choose to voluntarily pay a claim based on one of the Willinghams' policies.
In sum, we conclude that the Willinghams presented substantial evidence that United's agents made false representations of material existing facts regarding the policies insuring the lives of the four foster children. That is, the agents, knowing that the insured children were foster children, represented to the Willinghams that the policies were valid and enforceable. As we have set out above, the policies were void from their inception and were utterly unenforceable.
United further argues that the summary judgment was properly entered against the Willinghams' fraud claim because, United says, the Willinghams did not produce substantial evidence that they relied on the representations made by United agents. Specifically, United argues that the Willinghams did not rely on Langcuster's assurances that the policies were valid and that claims on them would be paid. United argues that because the Willinghams relied on the assertions made by representatives of other companies, they cannot now seek to hold United liable for fraud.
We conclude, however, that the "reliance" in question is not that which arose at the time the Willinghams decided to stop paying their premiums. Rather, our focus is on whether the Willinghams relied on the representations made by United's agents at the time the Willinghams decided to purchase the insurance policies. We conclude that the Willinghams presented substantial evidence that they did rely on the representations made by United's agents, Hester and Ross.
The final issue to address in determining whether the summary judgment against the Willinghams' fraud claim was proper is whether the Willinghams presented substantial evidence that they were damaged as a result of the alleged misrepresentations made by United's agents.
Actual damage is an essential element of a cause of action alleging fraud. Ala. Code 1975, § 6-5-100; Reeves v. Porter,521 So.2d 963 (Ala. 1988). United principally argues that because the Willinghams did not make any claims on the policies and were not denied any benefits, the Willinghams did not incur any actual damage. We disagree.
In Moore v. Liberty National Life Insurance Co.,581 So.2d 833 (Ala. 1991), we affirmed a summary judgment in favor of an insurer where the insured had made no claims on the policy and was not denied any benefits. That case is distinguishable from the present case, however. In Moore an agent of the defendant insurer made unauthorized loans against the insured's policies. When the insured discovered the unauthorized loans, Liberty National removed the loans from the policies and notified the insured of the steps it had taken to remedy the situation.Id. at 834. It was undisputed that the insured never made any claims on the policies and was never denied any request to borrow against the policies. Id. In short, there was no evidence that the plaintiff in Moore ever suffered any damage.
In the present case, it is similarly undisputed that the Willinghams never made any claims on the policies insuring the lives of their foster children. However, based on our discussion above regarding the validity of the policies, the policies purchased by the Willinghams were void from their inception. While the Willinghams were paying premiums on the policies, they believed that they were receiving valid insurance coverage, but they never actually received anything of value.
We reject United's contention that, as a matter of law, the payment of insurance premiums is not sufficient evidence of damage to support a claim of fraud against an insurer.See, Liberty National Life Insurance Co. v. Waite,551 So.2d 1003 (Ala. 1989); Brewton v. *Page 333 Alabama Farm Bureau Mutual Casualty Insurance Co.,474 So.2d 1120 (Ala. 1985). The undisputed evidence that the Willinghams paid premiums on the four life insurance policies is sufficient to support their claim that they were damaged as a proximate result of United's alleged misrepresentations.
In light of our disposition of the issues discussed above, we conclude that the trial court erred in entering the summary judgment as to the Willinghams' fraud claim. Therefore, as to that claim, the summary judgment is reversed.
 II. The Conversion Claim
The Willinghams also claim that by collecting and retaining the premiums on the four life insurance policies, United and its agents converted the Willinghams' money.
Conversion is a wrongful taking, detention, or interference, or an illegal use or misuse of another's property. Greene County Board of Education v. Bailey,586 So.2d 893, 898 (Ala. 1991). "The gist of the action is the wrongful exercise of dominion over property to the exclusion of or in defiance of a plaintiff's rights, where the plaintiff has a general or special title to the property or the immediate right to possession." Id. (citing Ex parte SouthTrust Bank ofAlabama, N.A., 523 So.2d 407 (Ala. 1988)).
In this case, the plaintiffs are seeking damages for the conversion of money. We have held that ordinarily "an action will not lie for the conversion of money." Greene County Boardof Education, 586 So.2d at 898. When the money at issue is " 'specific money capable of identification,' claims for conversion may be appropriate." Covington v. Exxon Co.,551 So.2d 935, 938 (Ala. 1989) (quoting Hunnicutt v. Higginbotham,138 Ala. 472, 35 So. 469 (1903)). In Covington, we recognized that when funds are segregated into a separate account, such as an escrow account, those funds may be the subject of a conversion. Id., at 939.
The Willinghams principally rely on Gillis v. Benefit TrustLife Insurance Co., 601 So.2d 951 (Ala. 1992). In that case the plaintiff and his wife had paid premiums on a health insurance policy issued by the defendant. The defendant refused to pay a claim submitted by the plaintiff's wife; the plaintiff sued, alleging, inter alia, conversion of the premium payments. Id., 601 So.2d at 951-52. The trial judge in that case granted the defendant's motion for a summary judgment, and this Court reversed.
The dispositive issue in Gillis was whether the money paid as premiums was sufficiently identified to be subject to conversion. In that case, the plaintiffs had selected a premium payment plan whereby the insurance company drew funds directly from the plaintiffs' checking account. We reversed the summary judgment, concluding that "[the plaintiff] presented substantial evidence that the money in question was identifiable." Id., at 952.
The present case is similar to Gillis in that both cases involved the payment of insurance premiums. That, however, is as far as the similarity goes. In Gillis, the insurance premiums were drawn by the defendant insurance company directly from a specific account belonging to the plaintiffs. In the present case, the only evidence is that the premiums were paid by the Willinghams to United. There is no evidence that leads us to conclude that the subject money is or was in any manner segregated or identifiable.
Even if the Willinghams are entitled to a refund of their premiums or to other money damages, the relationship between the Willinghams and United is akin to that of a debtor and creditor. We have stated that where there is "only a relationship of debtor or creditor, an action for conversion of funds representing the indebtedness will not lie against the debtor." Lewis v. Fowler, 479 So.2d 725, 727 (Ala. 1985) (citing Lyxell v. Vautrin, 604 F.2d 18 (5th Cir. 1979)).
If we were to hold that the money paid by the Willinghams to United in the form of premiums is sufficiently identifiable or segregated to give rise to a cause of action for conversion, we would be expanding the scope of that cause of action far beyond our holding in Gillis. In fact, the established rule that, generally, there is no cause of action for the conversion of money would, for all practical purposes, be abolished. We decline to take *Page 334 
that step at this time. Accordingly, the summary judgment in favor of United and its agents is affirmed as to the conversion count.
 Conclusion
The summary judgment in favor of United and its agents is affirmed as to the conversion count; it is reversed as to the fraud count; and the case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
MADDOX, J., dissents.
[1] While the Willinghams have adopted one of the foster children and two of the others still live with them, the record also shows that one of the foster children has been transferred to another foster home.
[2] This memorandum is evidence that United knew that foster parents ordinarily do not have a reasonable expectation of pecuniary loss due to the death of a foster child. The memorandum also reflects United's policy regarding the insurability of foster children.
[3] In addition to being the necessary result under § 27-14-3(a), this also appears to be the general rule deducible from the authorities on the issue. See, Insurable interest of fosterchild or stepchild in life of foster or step parent, or viceversa, 25 A.L.R. 1547, 1548 (1923); 43 Am.Jur.2d Insurance, § 982 (1982).