**Ida LAMBERT, Plaintiff,**

v.

**The INDEPENDENT LIFE AND AC-CIDENT INSURANCE COMPANY; Shelia Diann Conway,[1] Defendants.**

**No. CV 96–D–1730–N.**

United States District Court, M.D. Alabama, Northern Division.

Feb. 4, 1998.

---

1. Plaintiff originally named "Sheila Woodfin" as a party defendant in this action. Subsequent pleadings disclose, however, that "Shelia Diann Conway" and "Sheila Woodfin" are the same individual. (*See* Defs.' Br. at 1, n. 1; *see also* Pl.'s Resp. at 1 (referring to "Shelia Conway").)

Jere L. Beasley, Rhon E. Jones, Montgomery, AL, for Plaintiff.

Michael L. Bell, J. Bradley Powell, Birmingham, AL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court is Defendants Independent Life and Accident Insurance Company's ("Independent") and Shelia Diann Conway's ("Conway") Motion For Summary Judgment ("Defs.' Mot.") filed November 12, 1997. The Defendants filed a Brief In Support ("Defs.' Br.") on the same date. On November 14, 1997, the Defendants filed the Original Affidavit of Wayne Falls ("Falls Aff.") in support of their Motion. Plaintiff filed a Response ("Pl.'s Resp.") to the Defendants' Motion on December 8, 1997, to which Defendants' filed a Reply ("Defs.' Reply") on January 14, 1998.

Also before the court is Defendants' Motion To Strike Affidavit of Robert Lambert ("Defs.' Mot. To Strike"), filed January 14, 1998. Plaintiff filed a Response on January 28, 1998.

After a thorough review of the arguments of counsel, relevant law, and the record as a whole, the court finds that for the reasons set forth below, Defendants' Motion To Strike Affidavit of Robert Lambert is due to be granted in part and denied in part, and Defendants' Motion For Summary Judgment is due to be granted.

## JURISDICTION

The court properly exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity). The parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any *material* fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the *burden of production, not persuasion*, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587; *see also Anderson*, 477 U.S. at 249.

## FACTUAL SUMMARY [2]

In March of 1958, Plaintiff, and her husband, were issued identical Sickness and Ac-

---

**2.** Plaintiff's Response to Defendants' Motion For Summary Judgment offers a meager, almost non-existent recitation of Plaintiff's version of the facts underlying this dispute. Consequently, although some of the facts and dates noted below are derived from Plaintiff's Complaint, the vast majority are derived from Defendants' pleadings and from the court's review of various portions of submitted depositions.

cident Policies by Defendant Independent. (Compl. ¶ 7; Falls Aff. ¶ 2, Ex. A.) The policy at issue in this suit is the policy issued to Plaintiff's husband ("Policy"). That Policy was given policy number "58H707265A," although both policies fell under "Family Group Number" "6230." (Falls Aff. ¶ 2, Ex. A.) Premium payments were $.60 per week per policy, or $7.80 per quarter. (*Id.*) The combined premium payments for both policies was $15.60 per quarter. (*Id.*) The Policy was to pay twelve dollars per day if Mr. Lambert was hospitalized. (*Id.* ¶ 10.)

On approximately September 11, 1995, Defendant Conway, an employee of Independent, began collecting premium payments on the Policy. (*Id.* ¶¶ 5, 9.) On approximately November 18, 1995, Plaintiff's husband made a claim on the Policy, which Independent denied. (*Id.* ¶ 11.) The claim was for hospital services Plaintiff's husband received from October 27, 1995 to October 30, 1995 and from November 3, 1995 to November 6, 1995. (Pl.'s Resp., Ex. B.) On approximately December 8, 1995, Plaintiff received a letter from Independent denying coverage because, according to Independent, the Policy had lapsed on September 18, 1995, and the insurance contract was not in force when treatment was rendered. (*Id.* ¶ 12.) Plaintiff's husband passed away on December 9, 1995. (*Id.* ¶ 13.)

This action arose from the denial of coverage, and essentially turns on an October 1995 premium payment that was allegedly made, but is unaccounted for. Plaintiff contends that in October 1995, her son Robert Lambert made a premium payment on her behalf, in cash, directly to Conway. (Defs.' Mot., Ex. A, Lambert, I. Dep. at 73; Defs.' Mot. To Strike Aff., Ex. A, Lambert, R. Dep. at 24–25; Defs.' Br. at 3.) Plaintiff does not offer any evidence to establish *when* in October this cash premium payment was made.

According to the Defendants, the Policy at issue was a quarterly policy, renewed every three months. (Defs.' Br. at 4–5.) The quarterly premium payment for the policy period covering September 11, 1995 to December 10, 1995, was due on September 11, 1995. (*Id.* at 5 (citing Falls Aff. ¶ 6).) A $1.20 premium payment—the weekly premium rate for both policies—was made on October 9, 1995, and the Policy was due to lapse

on October 23, 1997, absent remittance of payment. (Defs.' Br. at 5; Falls Aff. ¶ 6.) When no premium payment was received by October 23, 1997, the policy lapsed. (*Id.*) Independent finally received payment on October 25, 1995. (Defs.' Br. at 5; Falls Aff. ¶ 7.)

This October 25, 1995 premium payment was listed on an "Open Item Account" form and turned in to Independent's district office on approximately October 27, 1995. (*Id.*) This "Open Item Account" form included a "code" of "RW," which indicated that the policy had lapsed and was to be reinstated. (*Id.*) Premium payment on the policy was keyed into Independent's accounting system and credited to Family Group Number "6230"—the Lambert's Family Group Number. (*Id.*) After a delay due to administrative errors, Robert Lambert's policy was reinstated in January of 1996. (Defs.' Br. at 6.) Plaintiff's claim under her husband's policy, totaling $72.00, was paid by check on approximately January 30, 1996. (*Id.*) Plaintiff refused to accept payment, and allegedly returned the checks to Independent. (*Id.*) This lawsuit followed.

## DISCUSSION

One of the key questions before the court is the status of the Policy on October 25, 1995. Defendants claim that the policy had lapsed two days earlier, on October 23, 1995, for non-payment of premiums. Plaintiff appears to be arguing that when payment was submitted—apparently on October 25, 1995—the policy was or should have been reinstated, and thus Plaintiff's husband's hospitalization from October 27, 1995 to October 30, 1995 and from November 3, 1995 to November 6, 1995 should have been covered. Troubling to the court is Plaintiff's complete failure to discuss Plaintiff's rejection of Independent's January 1996 $72.00 check. It appears to the court that when Plaintiff failed to make her required premium payment on time, her policy lapsed, and once the premium payment was received, Independent took steps to reinstate the policy. Due to an administrative error in Independent's office, reinstatement was delayed. Once reinstatement was effectuated, however, Independent

sent Plaintiff a check for $72.00, which Plaintiff allegedly returned to Independent without cashing.

Plaintiff's Complaint, as amended, contains six Counts. Count I alleges Fraud/Misrepresentation by the Defendants based on Conway's alleged "[misrepresentation] to Plaintiff that she was collecting premiums that would be credited to the policy." (Compl. ¶ 19.) Plaintiff claims damages based on her reliance on the "false representation[ ]." (*Id.* ¶¶ 21–22.) Count II appears to be a Suppression claim, as Plaintiff contends that Conway "fraudulently failed to disclose to Plaintiff that the premiums collected were not being credited to the policy." [3] (*Id.* ¶ 24.) Count III alleges that Conway made the Fraud/Misrepresentation and Suppression claims alleged in Counts I and II "innocently, recklessly, negligently or wantonly." (*Id.* ¶ 27.) Count IV alleges that Independent "negligently hired, trained, or supervised" Conway. (*Id.* ¶ 30.) Count V alleges that Independent "wantonly hired, trained, or supervised" Conway. (*Id.* ¶ 33.) Count VI alleges that Conway "acting as an agent for Defendant Independent, willfully converted the premium payments given to her by Plaintiff." (Am.Compl.¶ 36.)

### I. Motion To Strike Affidavit Of Robert Lambert.

■ Generally, a party cannot avoid summary judgment on the basis of a "sham" affidavit. *Brassfield v. Jack McLendon Furniture, Inc.,* 953 F.Supp. 1424, 1430 (M.D.Ala.1996)(De Ment, J.)(citing *Van T. Junkins and Associates v. U.S. Industries,* 736 F.2d 656 (11th Cir.1984)) When comparing discrepancies between affidavits and earlier deposition testimony, the district court must distinguish between discrepancies "which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.,* 805 F.2d 949, 953 (11th Cir.1986). "An affidavit may only be disregarded as a sham 'when a party has

given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact … [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" *Id.* at 954 (quoting *Van T. Junkins,* 736 F.2d at 657). Only those affidavit statements which are "inherently inconsistent" with earlier deposition testimony should be stricken. *Brassfield,* 953 F.Supp. at 1430 (quoting *W.C. Lane v. Celotex Corp.,* 782 F.2d 1526, 1531 (11th Cir.1986)).

Defendants argue that the Affidavit of Robert Lambert, submitted by the Plaintiff in opposition to Defendants' Motion For Summary Judgment, "is a blatant attempt to alter Robert Lambert's prior deposition testimony. The affidavit is completely inconsistent with his prior testimony, and is insufficient to create a genuine issue of material fact." (Defs.' Mot. To Strike at 1–2.)

■ Defendants essentially challenge two factual assertions raised in Lambert's Affidavit, executed December 5, 1997. First, Robert Lambert claims to have "often paid the insurance premiums on my father's policy for my mother and did so in October of 1995." (Pl.'s Resp., Ex. A., Lambert, R. Aff.) In his October 16, 1997 deposition, however, Robert Lambert states that prior to the October 1995 meeting between he and Conway where he made a cash premium payment on behalf of his mother, he never dealt with Independent on a business level. (Defs.' Mot. To Strike Aff., Ex. A., Lambert, R. Dep. at 14–16.) In addition, Plaintiff testified in her own deposition that this was the *only* time her son paid her premium, and that in the 35 years she had the policy, she always took care of the premium payments. (Defs.' Mot. To Strike Aff., Ex. C, Lambert, I. Dep. at 73–74.) The court finds that Robert Lambert's affidavit regarding this issue is "inherently inconsistent" with his earlier deposition testimony. Accordingly, the court finds that

**3.** Count II of Plaintiff's Complaint alleges suppression because Conway allegedly "fraudulently failed to disclose to plaintiff that the premiums collected were not being credited to the policy." (Compl.¶ 24.) Plaintiff contends in her Response to Defendants' Motion For Summary Judgment, however, that her suppression claim is based on

the fact that Conway allegedly "suppressed the fact that the reinstatement would be necessary and that they would not be credited to the policy." (Pl.'s Resp. at 5.) The Defendants note this problem with Plaintiff's pleadings, (Defs.' Reply at 3, ¶ 3), and the court will address these concerns *infra.*

Independent's Motion To Strike this factual assertion is due to be granted.

The second factual assertion in Robert Lambert's Affidavit that Defendants claim differs from his deposition testimony, is his claim that:

Conway informed me that she was collecting the premium and that the premium collected was going to be credited to my father's policy. She said nothing about the premium being past due or that the policy would have to be reinstated. She accepted the premium payment and told me that this money would keep the policy in force.

(Pl.'s Resp., Ex. A., Lambert, R. Aff. at 1–2.) In Robert Lambert's deposition, however, the following colloquy occurred:

Q: So then you went to get the pajamas, and then there was an insurance agent, Shelia [Crawford], I take it, it was?

A: She introduced herself, and that's who she said she was, right.

Q: And she was in the car?

A: Right.

Q: All right. Tell me about the conversation. Just sort of describe what happened and what she said, what you said.

A: She just said that she was there to collect the insurance. And I said, well, my dad's in the hospital and they're not here. But how much is it, and I'll pay it? And I paid it. She gave me the change, she marked the book, and she left. And that's all I ever—

Q: All right. So you know where to get the insurance book or the card?

A: Right. It hangs behind the door.

Q: So then you paid Shelia?

A: Right.

Q: How much—Do you remember how much it was?

A: I don't. I mean, honestly, I don't remember how much it was.

Q: Sure. But you paid her in cash?

A: Cash money.

Q: And then she marked the book?

A: Right.

Q: Did she appear to mark the book correctly? I mean, did it match up with what you gave her, best you remember?

A: Best I remember. Honestly, I did not look. I saw her mark the book. She took it, marked it, put it back in the envelope, and I hung it back behind the door.

Q: All right. How long did this encounter last with Shelia?

A: Maybe five to ten minutes.

Q: Okay. Was she nice to you?

A: Yes.

Q: And seemed to know what she was doing?

A: Yes.

Q: Have you had any dealings with Shelia since then?

A: No.

Q: So again, going back to the forty-nine years that you've been on this earth—almost forty-nine years, your total dealings with Shelia, the agent at Independent Life, would be limited to this five to ten-minute period of time?

A: Yes.

Q: And did she say anything to you about her efforts to try to collect the insurance? Did she say that she had been there a time or two before, or did y'all talk about your father being sick. Anything like that come up that you can remember?

A: I don't remember anything like that.

(Defs.' Mot. To Strike Aff., Ex. A, Lambert, R. Dep. at 24–27 (emphasis for clarity).)

Plaintiff contends that there is nothing "inherently inconsistent" between Robert Lambert's affidavit statement that "Conway told him the money would be credited to the policy or that the money would keep the policy in force," and the deposition testimony quoted above. (Pl.'s Resp. To Defs.' Mot. To Strike ¶ 2.) Plaintiff argues that "[i]n the deposition testimony cited by Defendants, Mr. Lambert was never asked if this constituted his entire conversation with Conway. He was simply asked to generally describe

the conversation ... and he was specifically asked if Conway mentioned previous efforts to collect on the insurance." (*Id.* ¶ 3.)

Defendants argue that "[i]t is clear that Robert Lambert indicated in his deposition testimony that Conway indicated to him that she was at his parents' home to collect their insurance premiums. In this respect, Lambert's affidavit is not inconsistent with his prior deposition testimony.... The remainder of Robert Lambert's affidavit, however, is completely inconsistent with his prior deposition testimony, and should be stricken." (Defs.' Mot To Strike at 6–7.)

■ Although the court views Robert Lambert's affidavit with suspicion, the court cannot find, under the standard articulated above, that his affidavit statements regarding Conway's statements to him, are "inherently inconsistent" with his previous deposition testimony. As Plaintiff's note, Robert Lambert was simply asked to generally describe his conversation with Conway. Once he answered that Conway said she was there to collect the insurance, Lambert was never asked if this constituted the entire conversation. There being no "inherent inconsistency," the court finds that Independent's Motion To Strike Robert Lambert's affidavit statements that "Conway informed me that she was collecting the premium and that the premium collected was going to be credited to my father's policy. She said nothing about the premium being past due or that the policy would have to be reinstated. She accepted the premium payment and told me that this money would keep the policy in force," is due to be denied.

## II. Motion For Summary Judgment

### A. Count I—Fraud/Misrepresentation

■ "To establish a prima facie case of fraudulent misrepresentation, a plaintiff must show: (1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance." *Boswell v. Liberty National Life Ins. Co.,* 643 So.2d 580, 581 (Ala.1994).

The only specific factual allegations Plaintiff offers in support of this claim is that "Conway represented that when she collected the premium it would be credited to the policy of Plaintiff's husband." (Pl.'s Resp. at 1.) Defendants argue first, that Plaintiff has never met or spoken to Conway, that the conversation at issue was actually between Conway and Plaintiff's son, and that Conway, consequently, "did not make *any* representation to plaintiff, much less a false representation." (Defs.' Br. at 9.) Therefore, according to the Defendants, "Plaintiff's claim ...cannot give rise to a fraud claim under Alabama law." Notably, Defendants fail to cite any case law in support of this contention.

■ Plaintiff responds that "[u]nder Alabama law, a misrepresentation made to a third party (such as Plaintiff's son), intended and ultimately passed on to the Plaintiff, allows the Plaintiff to rely on that statement and *it is immaterial that the statements were not made to her personally.*" (Pl.'s Resp. at 4 (emphasis in original)(citing *Henson v. Celtic Life Ins. Co.,* 621 So.2d 1268 (Ala.1993); *National States Ins. Co. v. Jones,* 393 So.2d 1361 (Ala.1980); 37 C.J.S. Fraud § 60 (1944).)) In *Henson,* the Alabama Supreme Court noted that, in a similar factual context to the one presented here, "it is immaterial that the statements were not made to her personally." *Henson,* 621 So.2d at 1272. Determinative for the court was whether the statements were actually intended to be, expected to be, or actually were, passed on to the Plaintiff. *Id.*

Here, Robert Lambert claims to have communicated the essence of his conversation with Conway to his mother, the Plaintiff. (Pl.'s Resp. at 1 and Ex. A., Lambert, R. Aff. at 2.) The essence of this conversation, allegedly, was that the premium payment would be credited to the Policy. (*Id.*) The Defendants have not offered any evidence to refute this contention. Accordingly, the court rejects Defendants' argument that Plaintiff cannot establish her claim because Conway and Plaintiff never actually spoke.

More persuasive, however, is Defendants argument that "it is clear from the record that the alleged representation, even if made, was not false." (Defs.' Br. at 9.) The record establishes that the premium was collected on October 25, 1995 and keyed into Independent's accounting system on October 27, 1995. (Falls Aff. ¶ 7.) Plaintiff does not chal-

lenge this assertion. Instead, Plaintiff contends that Falls' Affidavit "says the premium was *remitted* to Independent Life. The actual misrepresentation is that the premium payment would be 'credited to the policy.'" (Pl.'s Resp. at 4.).

■ Either way, however, the court fails to see how this alleged misrepresentation gives rise to Plaintiff's claim. First, the record shows that the premium payment was remitted to Independent *and* credited to Plaintiff's account. Plaintiff has not shown that the alleged representation was false.

■ Second, "a representation ... that causes a person to do nothing more than he was legally obligated to do without such a representation being made, is not material and therefore cannot constitute actionable fraud." *Reeves v. Porter,* 521 So.2d 963, 967 (Ala.1988) (*citing Ladd v. Brown,* 94 Mich. 136, 53 N.W. 1048 (1892); *Western Land Ass'n v. Banks,* 80 Minn. 317, 83 N.W. 192 (1900)); *see also Ames v. Pardue,* 389 So.2d 927 (Ala.1980). Plaintiff was required to timely submit the premium payment for the Policy to stay in effect. Plaintiff failed to do so, the policy lapsed, payment was collected two days later, and Independent began the process of reinstating the Policy. Conway collected the payment two days after lapse, and it was keyed into Independent's accounting system two days later. For the Policy to stay in effect, Plaintiff had to remit payment. In this case, for the Policy to be reinstated, Plaintiff would also have to remit payment. So, Conway's alleged representation that the premium collected would be credited to the Policy is not false.

Finally, the conversation between Conway and Plaintiff's son occurred *after* the premium payment was remitted. Consequently, Plaintiff has not, and indeed cannot show what she "relied" upon, or that any such reliance was "material." The court finds that Plaintiff has failed to establish a prima facie misrepresentation claim, and that, accordingly, Defendants' Motion For Summary Judgment on Count I of Plaintiff's Complaint is due to be granted.

B. Count II—Suppression

■ Under Alabama law, a plaintiff must establish four elements to support a fraudulent suppression claim: (1) a duty to disclose facts; (2) concealment or non-disclosure of material facts by the defendant; (3) inducement of the plaintiff to act; and (4) action by the plaintiff to his injury. *Norman v. Amoco Oil Co.,* 558 So.2d 903, 905 (Ala.1990); *see also Wolff v. Allstate Life Ins. Co.,* 985 F.2d 1524 (11th Cir.1993); Ala.Code § 6–5–102 (1975).

Plaintiff's entire argument is that "[t]he affidavit of Robert Lambert indicates that Conway suppressed the fact that the reinstatement would be necessary and that the premium would not be credited to the policy. . . . The same argument made earlier regarding the untruthfulness of the Conway representation applies· here also." (Pl.'s Resp. ·at 5.)

Defendants reassert the same arguments asserted in regards to Plaintiff's misrepresentation claim, namely that "there was no opportunity for the alleged suppression to take place because plaintiff has neither met nor spoken to Conway in her entire life. . . . [and] no suppression could have occurred because the material fact allegedly suppressed was not true." As the court noted in its discussion of Plaintiff's misrepresentation claim, the collected premium *was applied to the Policy.* Thus Plaintiff's contention that the Defendants suppressed the fact that "the premium would not be credited to the policy," is simply fallacious. As Defendants note, "the allegedly suppressed material fact, that the premium was not credited to [the Policy], was not fact at all. Obviously, there is no duty to disclose a non-existent material fact." (Defs.' Br. at 11.)

■ Further, Plaintiff has not shown how the alleged suppression of the fact that reinstatement of the Policy would be necessary was a material non-disclosure that induced Plaintiff to act. Plaintiff's son paid the premium to Conway, and there is no indication that Plaintiff would not have renewed the Policy had she known that the Policy had lapsed, or, for that matter, that she in fact *did not* know that the Policy had lapsed. The court finds that Plaintiff has failed to establish a prima facie Suppression claim, and that, accordingly, Defendants' Motion

For Summary Judgment on Count II of Plaintiff's Complaint is due to be granted.

### C. Count VI—Conversion

▮▮▮▮▮ Conversion is the wrongful taking, detention, or interference, or an illegal use or misuse of another person's property. *Willingham v. United Ins. Co. of America,* 628 So.2d 328, 333 (Ala.1993); *Citizens Bank of Moulton v. Jones,* 671 So.2d 737, 740 (Ala.Civ.App.1995). In order to support a claim for conversion, legal title and the immediate right of possession to the property in question must be shown. *Jones,* 671 So.2d at 740 (citing *Thompson v. Ford Motor Credit Co.,* 550 F.2d 256, 258 (5th Cir.1977)).[4]

Defendants argue that *Willingham* conclusively precludes Plaintiff's conversion claim. Plaintiff "concede[s] that the *Willingham* decision is not helpful to Plaintiff's argument but that the *Gillis v. Benefit Trust Life Ins. Co.,* 601 So.2d 951 decision does provide Plaintiff with a valid conversion claim." As is representative of most of Plaintiff's woefully deficient pleadings in this action, Plaintiff fails to expound on her contention, choosing instead to rest on this unsupported conclusion.

In *Willingham,* the Alabama Supreme Court stated that:

> In this case, the plaintiffs are seeking damages for the conversion of money. We have held that ordinarily "an action will not lie for the conversion of money." ... When the money at issue is " 'specific money capable of identification,' claims for conversion may be appropriate." ... [W]hen funds are segregated into a separate account, such as an escrow account, those funds may be the subject of a conversion....
>
> The Willinghams principally rely on *Gillis v. Benefit Trust Life Insurance Co.,* 601 So.2d 951 (Ala.1992). In that case the plaintiff and his wife had paid premiums on a health insurance policy issued by the defendant. The defendant refused to pay a claim submitted by the plaintiff's wife; the plaintiff sued, alleging, inter alia, conversion of the premium payments.... The

trial judge in that case granted the defendant's motion for summary judgment, and this Court reversed.

> The dispositive issue in *Gillis* was whether the money paid as premiums was sufficiently identified to be subject to conversion. In that case, the plaintiffs had selected a premium payment plan whereby the insurance company drew funds directly from the plaintiffs' checking account. We reversed the summary judgment, concluding that "[the plaintiff] presented substantial evidence that the money in question was identifiable." ...
>
> The present case is similar to *Gillis* in that both cases involved the payment of insurance premiums. That, however, is as far as the similarity goes. In *Gillis,* the insurance premiums were drawn by the defendant insurance company directly from a specific account belonging to the plaintiffs. In the present case, the only evidence is that the premiums were paid by the Willighams to United. There is no evidence that leads us to conclude that the subject money is or was in any manner segregated or identifiable.
>
> Even if the Willinghams are entitled to a refund of their premiums or to other money damages, the relationship between the Willinghams and United is akin to that of a debtor and creditor. We have stated that where there is "only a relationship of debtor or creditor, an action for conversion of funds representing the indebtedness will not lie against the debtor." ...
>
> *If we were to hold that the money paid by the Willinghams to United in the form of premiums is sufficiently identifiable or segregated to give rise to a cause of action for conversion, we would be expanding the scope of that cause of action far beyond our holding in Gillis. In fact, the established rule that, generally, there is no cause of action for the conversion of money would, for all practical purposes, be abolished. We decline to take that step at this time.*

---

**4.** The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)(in banc).

*Willingham,* 628 So.2d at 333–34 (citations omitted)(emphasis added).

▆ The court finds *Willingham* to be dispositive of Plaintiff's conversion claim here. As in *Willingham,* the only evidence here is that the premiums were paid by the Plaintiff, (through her son), to the insurance company. And, as in *Willingham,* the same distinction between the facts of this case and the facts of *Gillis* applies:

> The present case is similar to *Gillis* in that both cases involved the payment of insurance premiums. That, however, is as far as the similarity goes. In *Gillis,* the insurance premiums were drawn by the defendant insurance company directly from a specific account belonging to the plaintiffs. In the present case, the only evidence is that the premiums were paid by [Plaintiff] to [Independent]. There is no evidence that leads us to conclude that the subject money is or was in any manner segregated or identifiable.

*Willingham,* 628 So.2d at 333. Plaintiff has failed to substantiate her conclusion that *Gillis* supports her claim, and has not even attempted to distinguish the instant action from *Willingham.* That fact, in conjunction with the Alabama Supreme Court's strongly worded unwillingness to expand *Gillis* to an analogous factual situation (presented in *Willingham* ), convinces the court that Plaintiff's Conversion claim must fail.

Further, even if *Willingham* were inapplicable, Plaintiff has failed to establish a wrongful taking, detention, interference, or illegal use or misuse of her property. As noted earlier, the record indicates that the premium payment collected by Conway on October 25, 1997, was keyed into Independent's accounting system on October 27, 1997, two days after collection. The record further indicates that the premium was applied to Family Group Number "6230."

Based on the foregoing, the court finds that Plaintiff has failed to establish a viable claim for Conversion, and that, accordingly, Defendants' Motion For Summary Judgment on Count VI of Plaintiff's Complaint is due to be granted.

**D.   Counts III, IV, V.**

Because the court has found that Plaintiff has not established viable misrepresentation, suppression or conversion claims, Counts III, IV and V of Plaintiff's Complaint must fail. Count III alleged that the purported misrepresentation and suppression were undertaken "innocently, recklessly, negligently or wantonly." To substantiate this Count, however, viable underlying causes of action must be shown. As discussed above, Plaintiff has failed to do so.

Counts IV and V allege that Independent negligently and/or wantonly hired, trained, and supervised Defendant Conway. Plaintiff argues that she "has provided substantial evidence of a misrepresentation and suppression claim against the Defendants. Thus, Plaintiff's negligent and wanton hiring, training and supervision claims are proper." (Pl.'s Resp. at 5.)

As the court has noted above, however, Plaintiff has failed to establish her misrepresentation, suppression, and conversion claims. Accordingly, there being no breach of duty upon which to base her negligent and/or wanton hiring, training and supervision claims, Counts IV and V must fail as well. *See, e.g., Hargrove v. Tree of Life Christian Day Care Center,* 699 So.2d 1242 (Ala.1997), *rehearing denied* July 18, 1997 (affirming summary judgment and noting lack of underlying tort claim); *Zielke v. AmSouth Bank, N.A.,* 703 So.2d 354, 1996 WL 465765 (Ala.Civ.App.1996)(same)(unpublished).

## ORDER

Based on the foregoing, it is hereby CONSIDERED and ORDERED that:

(1) Defendant's Motion To Strike be and the same is hereby GRANTED IN PART and DENIED IN PART.

(2) Defendant's Motion For Summary Judgment as to all of Plaintiff's claims be and the same is hereby GRANTED.

(3) There being no issues remaining for the court's resolution, this action is hereby

DISMISSED in its entirety, each Party to bear their own costs.